Baychar MORRIS, a/k/a Baychar

v.

**RESOLUTION TRUST CORPORATION.**

Supreme Judicial Court of Maine.

Argued Nov. 3, 1992.
Decided March 26, 1993.

Timothy Robbins (orally) Law Offices of Richard B. Romanow, Portland, for plaintiff.

John B. Emory, Drummond & Drummond, Portland, for Resolution Trust Corp.

Thomas F. Monaghan (orally) Monaghan, Leahy, Hochadel & Libby, Portland, for American Bank.

Munsell St. Clair, Arlington, VA, (orally), for Resolution Trust Corp.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

GLASSMAN, Justice.

Resolution Trust Corporation (RTC), having been substituted for American Bank (American) and for American Federal Savings Bank (Federal), appeals from a judgment entered in the Superior Court (Cumberland County, *Lipez, J.*) on a jury verdict awarding Baychar Morris, a/k/a Baychar, compensatory and punitive damages in the total amount of $99,374 on her claims against American for the breach of a fiduciary duty and a violation of the Maine Consumer Credit Code—Truth–in–Lending (9–A M.R.S.A. §§ 8–101 to –404 (Supp. 1992)) (Consumer Code) and a judgment offsetting this amount against a judgment of foreclosure in the amount of $98,224.69 in favor of American. Baychar cross-appeals, challenging the court's award of attorney fees on her Consumer Code claim and denial of a jury trial in the foreclosure action. For the reasons discussed herein, we affirm the judgments.

## I. THE FACTUAL AND PROCEDURAL SETTING

Although the parties presented conflicting evidence concerning the events giving rise to Baychar's complaint, the jury rationally could have found the following facts: In the summer of 1987, Baychar employed Steven Wood, a building contractor, to renovate a building she had recently purchased in Eastport for use both as an art studio and as a residence. After Wood had performed a portion of the renovation, he informed Baychar that the project's total cost would be greater than he had expected. When Baychar could not quickly secure the financing to cover this increase in cost, Wood advised her to seek financing from Jonathan Young, a loan officer at American. During the course of their negotiations, Baychar sought Young's advice about whether she should employ another contractor, specifically questioning Young about Wood's ability as a builder and integrity as a businessman. Young reassured

Baychar of the following: that he had worked closely with Wood on several construction projects in the past; that he would monitor Wood's performance of the renovation; that Baychar need not be concerned about her selection of Wood as her contractor; and that Baychar should not consider employing an alternative contractor. Young further advised Baychar that she should pay Wood a portion of the project's increased cost out of her own pocket before her financing was approved and then reimburse that amount to herself on approval. Baychar was unaware of the fact that Wood was then delinquent on several debts owed to American and that these were accounts for which Young was responsible. Furthermore, Young had received pressure from his superiors at American to improve the performance of his loan portfolio just prior to his representations to Baychar.

Baychar ultimately received approval for a $97,000 line of credit as evidenced by a promissory note executed by Baychar, payable to American, and secured by a mortgage to American on the Eastport property. Young advised Baychar to immediately draw $50,000 from the line of credit to both reimburse herself for the payments previously made to Wood at Young's direction and to pay Wood an additional amount that Wood had requested. The funds received by Wood were immediately applied to his obligations with American. Baychar addressed several inquiries to Young about the status of the project during the following months. Young repeatedly reassured her that Wood was diligently performing the renovation. However, the renovation of the Eastport property had been suspended, leaving the project substantially incomplete.

On February 1, 1988, Baychar instituted the present action against American seeking damages for a breach of contract, a breach of a fiduciary duty, and a violation of the Consumer Code. American counterclaimed, seeking the unpaid balance owed on the note or a foreclosure on the East-

port property. On January 10, 1990, the RTC assumed receivership of American and transferred Baychar's note and mortgage to Federal—a newly-created financial institution operating under the RTC's conservatorship—but retained American's contingent liabilities. In October 1990, a jury returned a verdict in favor of American on Baychar's breach of contract claim and in favor of Baychar on her claim for a breach of a fiduciary duty for which it awarded her $40,746 in compensatory damages and $57,628 in punitive damages and on her claim for a violation of the Consumer Code. The trial court awarded Baychar the statutory limit of $1,000 for the Consumer Code claim together with $3,000 for attorney fees.[1]

In November 1991, a judgment was entered for Baychar against American consistent with the jury verdict and the award by the court plus interest and costs. A judgment was also entered for American on its foreclosure counterclaim in the amount of $98,224.69, plus interest from October 26, 1990 and attorney fees. In July 1991, after a hearing, the trial court denied American's motion for a judgment notwithstanding the verdict for Baychar and granted Baychar's motion to set off the amount of her judgment against that of American's. Federal, at no time a named party to the present action, entered the RTC receivership in September 1991. In May 1992, without objection, we granted the motion of the RTC, as receiver for American, to be substituted as the proper party in the present appeal from the judgment in favor of Baychar and, as receiver for Federal, as the proper party in Baychar's cross-appeal from the judgment entered in favor of American on its counterclaim. *See* M.R.Civ.P. 17.

## II. BAYCHAR'S FIDUCIARY DUTY ACTION

▮▮▮ The RTC challenges the sufficiency of the evidence supporting the jury's finding that American breached a fiduciary

---

1. 9–A M.R.S.A. § 8–208 provides for the award of actual damages not to exceed $1,000 and

reasonable attorney fees as determined by the court.

duty it owed to Baychar.[2] "The salient elements of a [fiduciary relationship] are the actual placing of trust and confidence in fact by one party in another and a great disparity of position and influence between the parties to the action." *Ruebsamen v. Maddocks*, 340 A.2d 31, 35 (Me.1975). Although the nature of the relationship between Wood and Baychar may have been amenable to different characterizations on the basis of the evidence presented at trial, we reject the argument of the RTC that to find a fiduciary relationship the evidence must establish that Baychar was completely incapable of acting to protect her own interests. We have previously stated that we "cannot overthrow the findings of the [fact finder] simply because the parties were mature individuals in full possession of their faculties. Confidential relations can, and do, exist between such people." *Ruebsamen*, 340 A.2d at 36. The jury heard competent evidence of the following: Baychar expressed to Young her concerns about Wood's capabilities and asked him whether she should continue with Wood as the contractor. Young professed superior knowledge of Wood's integrity and work performance. Baychar placed her trust in that superior knowledge when she continued with Wood rather than seeking an alternate contractor. Moreover, Young was in a superior position to Baychar in relation to Wood due to Young's extensive prior experience with Wood and his knowledge about Wood's financial condition. Young assured Baychar of Wood's integrity, recommended against Baychar seeking another contractor, and directed Baychar to disburse funds to Wood. On the evidence before it, the jury rationally could have found the existence of a fiduciary relationship between Baychar and Young and Young's breach of a fiduciary duty to Baychar.[3]

The RTC also challenges the sufficiency of the evidence to support an award of punitive damages. Punitive damages may be assessed when clear and convincing evidence supports a finding of malice, actual or implied. *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me.1985). Based on competent evidence in the record, the jury rationally could have found to a high degree of probability that Young's advice to

**2.** Pursuant to M.R.Civ.P. 50, American properly raised for consideration by the trial court the sufficiency of the evidence to support Baychar's claim. *See Lawrence v. Saunders*, 539 A.2d 1102, 1103–04 (Me.1988). However, the RTC in its capacity as receiver for American improperly raises several defenses to Baychar's fiduciary relationship action for the first time on appeal. *Blanchette v. York Mut. Ins. Co.*, 455 A.2d 426, 428 (Me.1983). The RTC argues that we should entertain these contentions for two reasons. First, the RTC contends that 12 U.S.C.A. § 1821(d)(13)(B) (1989 & Supp.1992) empowers the RTC to raise defenses for the first time on appeal. There is no support for this proposition. *See In Re: 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1343 (1st Cir.1992) (hereinafter *"Columbus"*) (section 1821(d) does not give the RTC the right to raise federal defenses for the first time on appeal); *Baumann v. Savers Federal Sav. & Loan Assoc.*, 934 F.2d 1506, 1512 (11th Cir.1991) ("any right of RTC to raise [a defense for the first time] on appeal does not come from section 1821"); *Olney Sav. & Loan Assoc. v. Trinity Bank Sav. Assoc.*, 885 F.2d 266, 275 (5th Cir.1989) (section 1821 "gives [the RTC] no new substantive rights in this appeal").

The RTC also argues that we should hear its defenses because they are meritorious and purely legal (thus requiring no further development of the record) and hearing them would promote judicial economy. Citing these reasons, the *Columbus* court allowed the RTC to raise a defense for the first time on appeal. However, that court also rested its holding on the fact that the RTC had assumed receivership *after* trial: "It is not uncommon for [the RTC] to become a party to a litigation after the final judgment of a trial court. To prevent [the RTC] from raising its federal defenses in such circumstances would vitiate much of the purpose of allowing these defenses in the first place." *Columbus*, 968 F.2d at 1344. This critical determinant is absent here: the RTC was appointed receiver in January of 1990, nine months *before* Baychar's action went to trial. Accordingly, we do not address those matters not presented by American for the trial court's consideration.

**3.** RTC argues that assigning American a fiduciary duty to disclose to Baychar its information about Wood's delinquencies would unfairly demand that American breach the duty of confidentiality about those delinquencies it owed to Wood in order to fulfill the duty owed to Baychar. This characterization, however, suffers from the fallacy of the false alternative. American could have fulfilled its fiduciary duty to Baychar in a number of ways without violating *the duty of confidentiality concerning the delinquencies owed by Wood*, including declining to vouch for Wood's integrity.

Baychar was disingenuous and motivated by a desire to improve Wood's debt performance thereby indirectly improving Young's position with American at Baychar's expense. This behavior may reasonably be considered outrageous, and thus it supports a finding of implied malice sufficient for an assessment of punitive damages. *Id.*

### III. THE SET–OFF BETWEEN THE JUDGMENTS AWARDED BAYCHAR AND AMERICAN

■ The RTC next challenges the trial court's set-off of American's foreclosure judgment against Baychar's judgment. It first argues that the portion of Baychar's set-off reflecting her punitive damages award that attended her fiduciary duty judgment was erroneous since 12 U.S.C.A. § 1825(b)(3) (1989) renders the RTC immune from punitive damages. That provision, nestled under the general heading of

"exemption from taxation," recites that the RTC

> shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate or recording tax or any recording or filing fees when due.

The language of this provision indicates that the RTC's immunity from "penalties" attaches solely in the context of taxation. The RTC cites no authority for the proposition that this immunity extends beyond this realm and shields it from the liability for those punitive damages from civil suits founded on the actions of the failed depository institutions for which it acts as receiver.[4]

■ The RTC also challenges the set-off on the ground that 12 U.S.C.A. § 1821(d) (1989 & Supp.1992) divested the trial court of subject matter jurisdiction of Baychar's causes of action.[5] The RTC first

---

**4.** We need not address the further argument of the RTC advanced for the first time on this appeal that the rationale behind punitive damages awards does not support their assessment against failed institutions under its receivership. *See FDIC v. Zoubi,* 792 S.W.2d 825, 829–30 (Tx.App.1990); *Professional Asset Management v. Penn Square Bank,* 566 F.Supp. 134, 136–37 (W.D.Okla.1983) (punitive damages against the bank would not punish the wrongdoers but instead the institution's "innocent creditors and uninsured depositors").

**5.** 12 U.S.C.A. § 1821(d) provides in pertinent part:

(3) Authority of receiver to determine claims. (A) In general. The [RTC] may, as receiver, determine claims in accordance with the requirements of this subsection.... (B) Notice requirements. The receiver ... shall—(i) promptly publish a notice to the depository institution's creditors to present their claims ... to the receiver by a date ... not less than 90 days after the publication of such notice.... (C) Mailing required. The receiver shall mail a notice similar to the notice published [to known creditors and claimants].
....
(5) Procedures for determination of claims. (A) Determination period. (i) In general. Before the end of the 180–day period beginning on the date any claim against a depository institution is filed with [the RTC, it] shall determine whether to allow or disallow the claim.... (C) Disallowance of claims filed after end of filing period. (i) ... claims filed after the date specified in the notice published

under paragraph 3(B)(i) shall be disallowed.... (ii) Certain exceptions. Clause (i) shall not apply with respect to any claim filed by any claimant after the date specified in the notice ... if—(I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and (II) such claim is filed in time to permit payment of such claim.... (F) Legal effect of filing.... (ii) ... Subject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.
(6) Provision for agency review or judicial determination of claims. (A) In general. Before the end of the 60–day period beginning on the earlier of—(i) the end of the period described in paragraph (5)(A)(i) ... or (ii) the date of any notice of disallowance ... the claimant may ... file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States ... (and such court shall have jurisdiction to hear such claim).... (B) [If claimant failed to continue his action within this time] the claim shall be deemed to be disallowed ... and the claimant shall have no further rights or remedies with respect to such claim.
....
(12) Suspension of legal actions. (A) [After the RTC is appointed as receiver, it] may request a stay for a period not to exceed [90 days]....
(13) Additional rights and duties.... (B) ... In the event of any appealable judgment, the

contends that paragraph 6(A) of this subsection confers exclusive federal court jurisdiction over actions against financial institutions of which the RTC has assumed receivership. However, "[i]n interpreting statutes ... courts must try to give them a harmonious, comprehensive meaning, giving effect, when possible, to all provisions." *McCuin v. Secretary of Health and Human Services*, 817 F.2d 161, 168 (1st Cir. 1987). We conclude that paragraph 6(A) does not divest state courts of jurisdiction, particularly when it has gained jurisdiction prior to an RTC receivership. The statutory language does not patently demand federal exclusivity. The interpretation urged by the RTC would render superfluous the removal provision in paragraph 13(B)(i), which allows but does not require that the RTC remove cases from the state court, and would conflict with the provision in paragraph 5(F)(ii) that proscribes any prejudice (such as dismissal for lack of jurisdiction) to those actions, such as the one before us, that were instituted prior to the RTC receivership.

The RTC further argues that section 1821(d) provides for an automatic stay of actions against insolvent depository institutions taking effect immediately on an RTC receivership and suspending the action until the administrative claims process is exhausted. We find no such requirement in the language of the statute. Furthermore, to read an automatic stay provision into the statute would render the stay provision in paragraph 12(A)(ii) superfluous and contradict the anti-prejudice provision in paragraph 5(F)(ii) by delaying actions for a period of time longer than provided in paragraph 12(A)(ii). Finally, such an interpretation would present a court with a dilemma in cases that violated the timely continuance provision in paragraph 6(B) while waiting for administrative exhaustion: the

court would be required to either dismiss the case in direct contravention of paragraph 5(F)(ii) or refrain from enforcing the paragraph 6(B) provision.

Finally, the RTC argues that section 1821(d) divests the court of jurisdiction when a claimant fails to file a timely administrative claim. Nothing in the record before us, however, establishes Baychar's failure to file a timely claim. Section 1821(d) defines several periods of time within which a claimant may file a timely claim, including that provided in paragraph 5(C)(ii) of *anytime* if the claimant did not receive notice of the receivership and files a claim while the RTC is capable of paying it. The record before us does not reflect findings either that Baychar received notice of the receivership or that the RTC is currently unable to pay a claim should Baychar now file. Thus, since we cannot conclude that Baychar has failed to file a timely claim, the RTC's interpretation of section 1821(d) is of no effect.[6]

■■■■ The RTC presents us with additional arguments against the set-off not presented by American to the trial court. It is well established that when a party seeks to raise an issue for the first time on appeal for the purpose of attacking the judgment from which he appeals, he is held to have waived that issue for appellate review because he failed to submit it for decision at the trial level. *Emerson v. Ham*, 411 A.2d 687, 690 (Me.1980). Here, however, the RTC was not a party to this litigation at the trial level, nor was it in its capacity as receiver for Federal in privity with American. A party that "intervenes in a pending action becomes a party to that action and, as a general rule, has the same rights and liabilities as the original parties." *New England Whitewater Ctr. v. D.I.F.W.*, 550 A.2d 56, 59 (Me.1988). Thus,

---

[RTC] shall (i) have all the rights and remedies available to the insured depository institution ... including removal to Federal court and all appellate rights.... (D) ... Except as otherwise provided in this subsection, no court shall have jurisdiction over—(i) any claim or action for payment from ... the assets of any depository institution for which [the RTC] has been appointed receiver.

**6.** The RTC urges us pursuant to M.R.Evid. 201 to take judicial notice of its publication of notice of the receivership. Even if we were to do so, there would be no evidence that the RTC mailed notice of the receivership directly to Baychar pursuant to paragraph 3(C) or that it is presently unable to pay any claims.

an intervenor assumes a "derivative role by virtue of an action already shaped by the original parties. He takes the controversy as he finds it and may not introduce his own claims to restyle the action." *Connecticut Water Co. v. Beausoleil*, 204 Conn. 38, 526 A.2d 1329, 1334 (1987). *See also Appeal of Municipality of Penn Hills*, 519 Pa. 164, 546 A.2d 50, 52 (1988) ("intervenor must raise claims in subordination to and in recognition of the propriety of the original action"). Had the RTC intervened in this appeal, it would not have been empowered to raise defenses to the set-off in addition to those raised by American at trial. The RTC did not, however, intervene in this appeal, but sought and was granted substitution as the real party in interest. We do not intend this substitution to divest the RTC of rights it may have had absent substitution, nor do we intend it to confer on the RTC any additional rights. Therefore, in determining whether to entertain the defenses that the RTC raises for the first time on this appeal, we consider whether these defenses might have been raised by the RTC in a separate action.

 We conclude that the doctrine of res judicata would have barred the RTC in its capacity as receiver for Federal from challenging the set-off had they not been substituted herein. "A successor in interest of property that is the subject of a pending action to which his transferor is a party is bound by and entitled to the benefits of the rules of res judicata to the same extent as his transferor, unless *[inter alia]* the successor was unaware of the pending action." Restatement (Second) of Judgments § 44 (1983). This principle is premised on the practical insight that if a transferee "is aware of the litigation but does not join as a party, he acquiesces in the transferor's continuing, for purposes of the litigation, to be the apparent owner of the interest in the property. His doing so is in effect treating the transferor as his representative in the action." *Id.* at comment a. *See also Bodnar v. Brinsfield*, 60 Md.App. 524, 483 A.2d 1290, 1295 (1984) ("persons who are directly interested in a suit and have knowledge of its pendency and refuse or neglect to appear and avail themselves of their rights are concluded by the proceedings as effectually as if they were named in the record") (quoting *Williams v. Snelby*, 92 Md. 9, 48 A. 43, 48 (1900)).

Here, American held Baychar's note when she initiated this litigation in November of 1988. American thus properly pursued a counterclaim for foreclosure on that note. The RTC assumed receivership of American on January 10, 1990 and transferred Baychar's promissory note and mortgage to Federal—for which the RTC was the conservator—the next day. Thereafter, American continued to pursue the foreclosure action through the trial and the entry of the judgments in November, 1990. Federal was first identified as the owner of Baychar's note and mortgage in April 1991 in the course of American's opposition to Baychar's motion for a set-off of the judgments. Federal never intervened in the foreclosure action and did not enter RTC receivership until September 13, 1991. By Federal's failure to intervene at any time in this litigation, it consented to American's prosecution of its case and is bound thereby. The RTC, as the receiver of and substituted party for Federal, may not now raise defenses that were not presented by American at the trial of this case.

## IV. BAYCHAR'S CONSUMER CODE CLAIM

 The RTC also argues that American could not have violated the Consumer Code because the line of credit it provided Baychar was a commercial loan as opposed to a consumer credit transaction. The Consumer Code does not govern commercial loans; rather, it governs the transactions made by a "person who regularly extends credit that is payable in installments, or is subject to a finance charge, to consumers for personal, family or household purposes, when such extensions are secured by personal property, real property or both and such property is used or expected to be used as the consumer's principal dwelling...." 9–A M.R.S.A. § 8–201(1). The RTC argues that American was unaware that Baychar intended to use the Eastport property as her home. Al-

though Baychar's loan application was labeled "commercial" and she planned to construct a studio at the Eastport property in which she could work, there was competent evidence in the record to support the finding that American was aware of Baychar's intent to use the property as her home. During the loan application process, Baychar had specifically advised Young of her intent to reside at those premises, and Young saw a floor plan and pictures of the property configured as a residence.

## V. BAYCHAR CROSS–APPEAL

 By her cross-appeal, Baychar challenges the trial court's resolution of her Consumer Code claim. She argues that she merits a more substantial attorney fee award than granted by the trial court. We disagree. The trial court's award of attorney fees is reviewable only for an abuse of discretion. *Poussard v. Commercial Credit Plan*, 479 A.2d 881, 884 (Me. 1984). The provision for attorney fees seeks to "aid in the effective enforcement" of the Code. *Poussard*, 479 A.2d at 883. The trial court noted that Baychar's central actions were for the breach of a fiduciary duty and the breach of a contract and reasoned that the evidence attending these actions fortuitously established her action against American for a violation of the Consumer Code. Thus, the court did not abuse its discretion in reasoning that a sizable award of attorney fees was not necessary for the effective enforcement of the Consumer Code and in establishing the fee accordingly at $3,000.

Baychar also contends that her defenses to American's foreclosure action of lack of substantial performance and fraud should have been presented to a jury. An issue legal in nature is not attended by a right to jury trial when it is raised as a defense to an equitable issue. Entitlement to a jury trial depends on the type of relief requested by the claim, whether it be in the form of a complaint, a counterclaim or a cross-claim. *See Cyr v. Cote*, 396 A.2d 1013, 1016 (Me.1979); *Merchants Bank v. Thibodeau*, 143 Vt. 132, 465 A.2d 258, 260 (1983). American's statutory action for foreclosure against Baychar is equitable in nature and does not merit a jury trial. 14 M.R.S.A. § 6322 (Supp.1992). Accordingly, the court properly denied Baychar's request.

The entry is:

Judgments affirmed.

All concurring.