STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                                  DOCKET NO. CV-06-430
                                                  REC - CUM 12/17/...

BRUCE SARGENT,
SARGENT HOLDINGS, LLC and
SARGENT GRAVEL, LLC,
                        Plaintiffs
                                                  FINDINGS AND     GARBRECHT
                                                  DECISION    DONALD L.
v.                                                            LAW LIBRARY

JENNIFER C. SCRIBNER MASON,                              JAN 24 2008
FRONTIER LAND HOLDINGS, LLC and
J. MASON CONTRACT CUTTING, INC.,
                        Defendants

A four-day jury-waived trial was held in the Cumberland County Superior Court

on November 27 through November 30, 2007. Based upon the evidence presented, the

Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Jennifer C. Scribner Mason ("Mason"), a resident of Harrison, Maine, has been

involved in the logging and excavation business since 1996. By the fall of 2004, she was

in need of cash to complete a gravel pit and subdivision which she had started in

Harrison, Maine. She sought out a buyer for the two projects who would contract with

her to provide development, operational and management services for the project. She

found Bruce Sargent ("Sargent") of Presque Isle, Maine, who agreed to buy the

properties. The parties agreed to a deal the terms of which were set forth in three

contracts entered into by the parties:

1.      A purchase and sale agreement between Mason and Sargent

        in which Mason personally agreed to convey to Sargent the 29.9-acre

        subdivision and the adjacent 25-acre gravel pit ("P&S Agreement").

2. A contract between Sargent Holdings, LLC (a limited liability company set up by Sargent expressly for the ownership and development of the subdivision parcel) and Frontier Land Holdings, LLC ("FLH") (a limited liability company set up by Mason) ("Subdivision Contract"). This contract established that FLH would act as manager of the subdivision project and required it to construct a private road in the subdivision, install electric power, a storm-water detention system and coordinate the sale and development of lots within the subdivision.

The contract established a "Guaranteed Price" for the project, which required Sargent Holdings, LLC to make the following payments:

A) The "Guaranteed Price" of $170,000.00 subject to a 15% upward adjustment for actual costs incurred (for a total of $195,500.00);

B) Actual power installation costs, estimated (but not guaranteed) at $30,000.00;

C) Additions and deductions by change order;

D) Diesel fuel adjustment, to the extent diesel fuel cost exceeded $2.30 per gallon;

E) Management fee of $3,333.00 per month for 18 Months (for a total of $60,000.00);

F) Ledge and blasting costs; and

G) Other items detailed in the Contract and not at issue in this litigation.

2

3. A contract between Sargent Gravel, LLC (a limited liability company set up by Sargent expressly for the ownership and development of the gravel pit parcel) and FLH ("Gravel Pit Contract"). This Contract established that FLH would act as manager of the gravel pit project in return for a management fee of $1,667.00 per month for 5 years (for a total of $100,000.00). The Gravel Pit Contract required FLH to develop and operate the gravel pit and to provide materials for use in the subdivision.

The closing of the transactions took place in Sargent's attorney's office in Presque Isle and all documents, including the three contracts summarized *supra* and the two deeds of conveyance, were executed and delivered on May 4, 2005.

On that same date (although the acknowledgements erroneously reflect the date of March 4, 2005), Jennifer Mason personally and Jennifer Mason as President of Land and Legacy, Inc. executed two mortgage deeds, security agreements and financing statements which purport to secure the obligations of the mortgagor under the Subdivision and Gravel Pit Contracts. It is noteworthy that the mortgage from Jennifer C. Scribner Mason personally is signed by Jennifer C. Scribner Mason as President of Land and Legacy, Inc. and the mortgage from Land and Legacy, Inc. is signed by Jennifer Mason in her individual capacity.

Sargent is an experienced and sophisticated businessman who regularly employs attorneys and accountants and who owns a business that has gross annual revenue of $220 million dollars. He chose not to view the property in Harrison until after the controversies underlying this suit arose. Before the Contracts were terminated in May 2006, Sargent did not look at the invoices or bank records which had been provided to

3

him. He advanced or paid money for the projects as requested by Mason and did not keep track of how much he had spent as the projects progressed.

From May 4, 2005 until FLH was terminated as manager in May 2006, FLH maintained the books and records for the two projects. Although FLH was eventually able to present a complete accounting at the time of trial, at all times prior to termination of the Contracts and for many months thereafter the books and records of the projects were in considerable disarray.

In March 2006, the Department of Environmental Protection cited Sargent Holdings, LLC for starting construction of a project that includes one or more acres of disturbed area without first obtaining a permit. This violation resulted in a fine to Sargent Holdings, LLC in the amount of $6,910.00, which has been paid to the State of Maine.

The Gravel Pit Contract required Sargent Gravel to advance $100,000.00 for the expenses to be incurred within the scope of that contract. The Contract provided that "unlike the accompanying subdivision contract and development agreement, the cost of the work is not guarantied (sic)." The Contract also provided in § 4.1 that "[t]he work shall continue as business requires until the $100,000.00 allowance is fully used if sooner unless otherwise agreed in writing by the parties." The parties never agreed in writing to any changes or further expenditures. However, both parties continued to perform under the Gravel Pit Contract until it was terminated in May 2006.

The purpose of the Gravel Pit Contract was to develop the gravel pit and to provide materials to the subdivision project for road construction and otherwise as needed and for sale. The Gravel Pit Contract evolved as it went forward as a result of changes in the Subdivision Contract such as the widening of the road and the need to

process material removed from the subdivision and as a result of the need for blasting, hammering and crushing to provide usable and saleable material.

On May 22, 2006, Attorney Luke Rossignol sent two letters on behalf of Sargent Holdings, LLC and Sargent Gravel, LLC to FLH, J. Mason Contract Cutting, Inc. and Jennifer C. Scribner Mason personally claiming default and termination of the Subdivision and Gravel Pit Contracts.

## CONCLUSIONS OF LAW

### I.    The Plaintiffs' Counts

In their Complaint, the Plaintiffs assert ten counts against Defendants Jennifer C. Scribner Mason, individually; Frontier Land Holdings, LLC; and J. Mason Contract Cutting, Inc. The Plaintiffs make essentially two arguments to support their claim that Mason is personally liable on these Counts. First, the Plaintiffs argue that the P&S Agreement imposes certain duties and obligations on Mason because she signed it individually. While it is undisputed that Mason did in fact sign the P&S Agreement, the Court disagrees with the Plaintiffs that this fact alone is sufficient to hold her individually liable. Indeed, when the three Contracts at issue in this case are read together, it is clear that they reveal that the parties permitted and intended for FLH alone to manage both of the projects that underlie the present action. In § 2.C of the P&S Agreement, entitled "Seller's Continuing Operational Services," Mason is expressly given the right to appoint a designee to manage the gravel pit. In accordance with this right, Mason appointed FLH as manager and FLH is the signatory to the Gravel Pit Contract. The Subdivision Contract contains a Merger Clause, which states in relevant part "[t]he Contract represents the entire and integrated agreement between the parties hereto and supersedes prior representations or agreement, either written or oral." Subdivision Contract § 1.1. Mason is not a party to the Subdivision Contract and,

5

by virtue of the Subdivision Contract's own language, the fact that she is a party to the P&S Agreement has no effect on her liability under the Subdivision Contract. Thus, the fact that Mason personally signed the P&S Agreement is not sufficient to hold her personally liable for the Plaintiffs' Counts.

Second, the Plaintiffs argue that Mason is personally liable on these Counts because FLH assigned its duties under the Subdivision Contract and the Gravel Pit Contract to Mason and she assumed the obligations thereunder. The evidence does not support this conclusion. As the plaintiff, and as the parties asserting an assignment, the Plaintiffs have the burden of proving by a preponderance of the evidence that FLH assigned the Contracts to Mason individually. *Sturtevant v. Town of Winthrop*, 1999 ME 84, ¶ 10, 732 A.2d 264, 267. "For an assignment to be enforceable there must be an act or manifestation by the assignor indicating the intent to transfer the right to the assignee." *Id.* ¶ 11, 732 A.2d at 267. In the instant case, the Plaintiffs have not produced any documents to show that an assignment took place. Nor is the Plaintiffs' evidence that Mason personally sometimes invoiced the Plaintiffs for management fees sufficient to prove an assignment. *See Id.* ¶ 13, 732 A.2d at 268 (While noting that "[t]he correspondence between [the parties] show that Sturtevant was sometimes referred to by the Town, and by himself, as an individual and sometimes as a corporation...[f]or example, the Town payment records...show that he was paid...in various capacities," the Law Court nonetheless upheld the finding of the trial court that no assignment had occurred).[1] Therefore, the Court does not find sufficient evidence to support the Plaintiffs' claim that the Contracts were assigned to Mason individually.

---

[1] The Court also does not find sufficient evidence to support a piercing the corporate veil argument. The Law Court has stated that before a court may pierce the corporate veil, a plaintiff must establish (1) that "the defendant abused the privilege of a separate corporate identity" and (2) that "an unjust or inequitable result would occur if the court

6

Thus, the Court does not find that Mason is personally liable for any of the Plaintiffs' Counts. Nor does the Court find sufficient evidence to implicate J. Mason Contract Cutting, Inc. as liable for any of the Plaintiffs' asserted Counts. Accordingly, the Court dismisses all claims against Mason individually and J. Mason Contract Cutting, Inc.

At the close of the Plaintiffs' case, the Court granted the Defendants' Rule 50(d) Motion as to Counts VI through XI of the Plaintiffs' Complaint. The Court addresses the remaining Counts below.

## A.    Breach of Contract

The Court finds that the termination of the Subdivision Contract and the Gravel Pit Contract by the Plaintiffs was proper as FLH had breached the Contracts in two specific ways. First, FLH failed to keep full, detailed and accurate accounts and records. Second, FLH failed to manage compliance with State of Maine laws and to timely process and obtain necessary State approvals.

The Plaintiffs have also claimed other breaches of contract, including that FLH failed to perform the work required under the Contracts in a competent, timely, good and workmanlike manner and that FLH failed to perform under the Contracts in the best interest of the Plaintiffs. The credible evidence does not support these claims.

---

recognized the separate corporate existence." *Johnson v. Exclusive Properties Unlimited*, 1998 ME 244, ¶ 6, 720 A.2d 568, 571. In this case, both Sargent and Mason established limited liability companies for the purposes of developing the subdivision and gravel pit and executing the contracts related to each. There is no credible evidence that Mason used FLH as a means to cover up fraud or illegality. Accordingly, Mason did not abuse the privilege of FLH. Nor does equity require piercing the corporate veil in this case. Sargent is an experienced businessman well aware of the characteristics of separate corporate identities (as evidenced by the fact that he established two new limited liability companies of his own to be signatories to the Subdivision and Gravel Pit Contracts); he chose to contract with FLH and must now accept what he agreed to.

7

## 1.    Damages: Subdivision Contract

The Plaintiffs paid to FLH the sum of $407,204.96 under the Subdivision Contract after credit for the balance remaining in the bank account, which sum includes the $100,000.00 advance.

Under the Subdivision Contract, FLH was obligated to complete the subdivision for the contract price of $195,500.00 plus the actual power installation costs, the management fee and agreed upon change orders. In connection with the subdivision, the Plaintiffs agreed to contribute $10,000.00 toward the cost of a solar model home; widening the road by 6 feet and paving it; chipping wood for the roadside entrances to the individual house lots; installing 20 driveway culverts; and erecting a 52-foot rock wall at the subdivision entrance. The Court finds the allowable costs associated with the development of the subdivision beyond the $195,500.00 Contract price are as follows:

| | |
|---|---|
| Solar Model Home | $10,000.00 |
| Road Paving | $59,118.10 |
| Wood Chipping for House Lots (Exhibit 60) | $7,063.20 |
| Driveway Culverts (Exhibit 60) | $3,904.21 |
| 52' Rock Wall (Exhibit 60) | $4,976.83 |
| Management Fee through termination (June 1, 2005 – May 22, 2006) | $40,000.00 |
| Actual Power Installation Costs Reasonably Incurred | $54,323.38 |
| TOTAL | $179,385.72 |

Thus, the total of both the Contract price ($195,500.00) and the combined power installation costs, management fee and further agreed upon costs ($179,385.72) is

$374,885.72. The Plaintiffs are entitled to a credit for the $407,204.96 paid plus the expenses reasonable to complete the contract, including:

| Detention Pond | $15,000.00 |
|---|---|
| Grading and Seeding Erosion Control | $2,500.00 |
| TOTAL | $17,500.00 |

Therefore, FLH owes $49,819.24 in damages to the Plaintiffs for breach of the Subdivision Contract.

### 2.    Damages: Gravel Pit Contract

While the Gravel Pit Contract states that "[t]he work shall continue as business requires or until the $100,000.00 allowance is fully used if sooner unless otherwise agreed in writing by the parties," and no such written agreements were ever executed by the parties, the Court finds that the parties waived this provision requiring a writing by their course of dealing. Accordingly, Sargent Gravel, LLC was obligated to pay the actual costs incurred in the development of the gravel pit, to the extent those charges were reasonable under the circumstances or expressly agreed to. By June 10, 2005, more money was needed for the gravel pit than the $100,000.00 set forth in the Gravel Pit Contract and from then until at least March 20, 2006, the Plaintiffs advanced money to FLH (see Pl.'s Ex. 19 and Def.'s Ex. 14) for the gravel pit project. In addition, the Plaintiffs made payments to others or were entitled to credit for additional sums, including extracted material sale proceeds. The Court finds that the Plaintiffs' total post-purchase investment in the gravel pit was $572,971.82.

Prior to the termination of the Contract, FLH was not accurately differentiating the costs attributable to the Gravel Pit Contract from the costs chargeable under the

Subdivision Contract and the Plaintiffs were not insisting on such specificity or questioning the allocation made by FLH in its requests for additional funds. As a consequence, there was not a meeting of the minds as to what charges were properly allowable to the Gravel Pit Contract or what expenses were reasonable under the Contract as it evolved. The Court finds that the charges that are reasonable under the Gravel Pit Contract and pursuant to the parties' course of dealing is a function of how much material was processed at the gravel pit. The parties are in substantial disagreement about this and considerable evidence was adduced by each side as to the volume of material handled.

The Court finds that Kurt Youland, a retired excavator and developer is a credible witness insofar as he testified about reasonable expenses in the industry to process extracted materials. However, the court does not find his testimony concerning the volume of material processed at the site to be credible because that testimony relies on the testimony of John Toothaker and Greg Holt, two witnesses the Court does not find credible.

The court further finds that the amount of materials processed at the gravel pit and the reasonable costs associated with the processing are as follows:

| | |
|---|---|
| 49,300 Cubic Yards of Crushed Rock @ $5.00 per yard | $246,500.00 |
| Blasting | $72,000.00 |
| Clearing 4 Acres @ $6,000.00 per acre | $24,000.00 |
| Removal of 22,000 Cubic Yards of Overburden @ $1.00 per yard | $22,000.00 |
| Processing 40,000 Cubic Yards of Overburden @ $3.00 per yard | $120,000.00 |
| Screening 4,000 Cubic Yards of Loam @ $3.50 per yard | $14,000.00 |
| Hammering 10,000 Cubic Yards of Rock @ $2.00 per yard | $20,000.00 |
| TOTAL | $518,500.00 |

In addition to the extraction and processing costs, the Plaintiffs were obligated to pay FLH $1,667.00 per month until termination of the contract, or $20,000.00, and 3% of gross sales of $20,000.00, or $600.00. Further, the Plaintiffs agreed to pay $4,000.00 for bathroom renovations in connection with the gravel pit operation. Thus, in addition to the $518,500.00 set forth above, the Plaintiffs also properly paid $24,600.00.

Therefore, the total allowable costs with respect to the gravel pit equal $543,100.00 and the amounts paid or credited to the Plaintiffs total $572,971.82, leaving a balance owed to the Plaintiffs by FLH of $29,871.82.

3.  **Effect of the Mortgage Deeds, Security Agreements and Financing Statements**

At the same time that the P&S Agreement, Subdivision Contract and Gravel Pit Contract were executed, two Mortgage Deeds, Security Agreements and Financing Statement ("mortgages") were also executed. One of the mortgages was executed by Mason individually and the other by Land and Legacy, Inc. For purposes of this decision, the Court will assume that the mortgages were properly executed.[2] Both mortgages state that they are being given "as security for payment and performance of Mortgagor's obligations under a certain Subdivision Construction and Development Agreement and as may be required by a Gravel Pit Development and Operation Agreement..." The mortgagors are Mason individually and Land and Legacy, Inc., neither of which owe any obligations under either the Subdivision Contract or the Gravel Pit Contract (see discussion *supra* setting forth the reasons why this Court does not find that Mason individually is obligated under either Contract). Accordingly, these mortgages are a nullity.

---

[2] As noted above, the mortgage from Mason personally is actually signed by Mason as President of Land and Legacy, Inc. and the mortgage from Land and Legacy, Inc. is actually signed by Mason individually.

## B.    Conversion

The credible evidence does not support the Plaintiffs' claim that the Defendants converted their property except in two specific instances: the Napa Auto Parts retained by FLH and the blue Chevy pick-up truck disposed of by FLH. The Court therefore awards damages to the Plaintiffs in the amount of $1,000.00 for the Napa Auto Parts and $1,800.00 for the Chevy truck for a total damages award of $2,800.00 on the Plaintiffs' Conversion Count.

## C.    Breach of Fiduciary Duty

The Court finds no breach of fiduciary duty by the Defendants. Both the Subdivision Contract and the Gravel Pit Contract expressly state that the relationship of FLH thereto is "as an independent contractor and not an agent of" the Plaintiffs. Subdivision Contract § 3.1; Gravel Pit Contract § 3.1. Thus, there is no contractual fiduciary relationship. Nor is there a common law fiduciary relationship. The Law Court has identified the two "salient elements" of a fiduciary relationship as: (1) "the actual placing of trust and confidence in fact by one party in another" and (2) "a great disparity of position and influence between the parties at issue." *Bryan R.*, 1999 ME 144, ¶ 19, 738 A.2d at 846, quoting *Morris v. Resolution Trust Corp.*, 622 A.2d 708, 712 (Me. 1993) (internal quotations omitted). The credible evidence does not support a finding that a disparity existed between the parties. Indeed, Sargent is an experienced businessman whose various companies and affiliates produce gross annual revenue of $220 million dollars. Accordingly, the Court finds no evidence of the existence of a fiduciary relationship; therefore, there can be no breach of such a relationship.

## D.    Unjust Enrichment

"Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the

law compels performance of a legal and moral duty to pay." *A.F.A.B., Inc. v. Town of Old Orchard Beach*, 639 A.2d 103, 105 n. 3 (Me. 1994). In the instant case, there are various express contracts between the parties, the existence or validity of which are not disputed. Therefore, unjust enrichment is not proper in this case.

### E.    Negligent and Intentional Misrepresentation

The Plaintiffs have claimed that the Defendants engaged in intentional and negligent misrepresentation. The credible evidence in this case does not support those claims.

## II.    The Defendants' Counterclaims

The Defendants asserted various Counterclaims against the Plaintiffs. The Court finds that the credible evidence does not support Counterclaims I through VIII. The Defendants did not present evidence on Counterclaim IX. The Court finds no breach of the option contract, as asserted in Counterclaim X, and therefore does not find that the option contract is voided. On all Counterclaims, the Court finds for the Plaintiffs and, accordingly, awards no damages to the Defendants.

## III.    Attorney's Fees

The Plaintiffs assert that they are entitled to attorney's fees pursuant to this clause, which appears in both the Subdivision Contract and the Gravel Pit Contract:

> [FLH] agrees to indemnify, defend and hold harmless the [Plaintiffs] from and against any and all claims, losses, damages, expenses (including reasonable attorney's fees), suits, or actions whatsoever caused by [FLH's] negligence, acts, omissions, or violation of applicable laws, rules or regulations, or for acts in violation of this Agreement which continue after written notice of default.

Subdivision Contract § 3.1; Gravel Pit Contract § 3.1.

The Court notes as an initial matter that it is not clear whether this provision entitles the Plaintiffs to collect attorney's fees from FLH in all instances or only when claims are asserted by a third party. However, even assuming that first party claims are included within the scope of this indemnification clause, the Court finds that the Plaintiffs did not send written notice of default to FLH as they are required to do as a prerequisite to indemnification from FLH. In May 2006, the Plaintiffs via their attorney sent a letter claiming that FLH had defaulted under the Contracts. This letter also terminated the Contracts. Thus, there were no continuing violations of the Agreement after written notice of default because the Contracts had been terminated. Nor did the letter sent in May 2006 allege that FLH had converted the Napa Auto Parts and Chevy truck. Accordingly, the Plaintiffs are not entitled to attorney's fees.

Therefore, the entry is:

> Judgment for the Plaintiffs Bruce Sargent, Sargent Holdings, LLC and Sargent Gravel, LLC against Frontier Land Holdings, LLC in the amount of $82,491.06, together with pre-judgment interest at the rate of 7.36% and post-judgment interest at the rate of 10.99%, and for their costs.

> The clerk shall incorporate this Decision into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this 17th day of _December_, 2007.

Robert E. Crowley
Justice, Superior Court



CUMBERLAND COUNTY SUPERIOR COURT
PO BOX 287
PORTLAND ME 04112

# First Class Mail

DAVID HIRSHON ESQ
TOMPKINS CLOUGH HIRSHON & LANGER
PO BOX 15060
PORTLAND ME 04112-5060

CUMBERLAND COUNTY SUPERIOR COURT
PO BOX 287
PORTLAND ME 04112

# First Class Mail

First Class Mail

CHRISTOPHER BRANSON ESQ
THOMAS DOUGLAS ESQ
MURRAY PLUMB & MURRAY
PO BOX 9785
PORTLAND ME 04104