2008 ME 113

**CAMDEN NATIONAL BANK**

v.

**CREST CONSTRUCTION, INC. et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 5, 2007.
Decided: July 10, 2008.

Michael S. Haenn, Esq. (orally), Bangor, ME, for Camden National Bank.

J. Hilary Billings, Esq. (orally), Law Office of J. Hilary Billings, Portland, ME, for Anne Morrow.

Panel: CLIFFORD, ALEXANDER, LEVY, SILVER, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] Camden National Bank appeals from the judgment of the Superior Court (Penobscot County, *Mead, J.*) entered following a jury trial held in connection with Anne Morrow's counterclaims for negligence and breach of fiduciary duty brought against Camden National Bank in response to the Bank's complaint against Morrow and Crest Construction, Inc. for foreclosure. The jury found in favor of Morrow on those counterclaims and the court subsequently denied the Bank's M.R. Civ. P. 50(b) motion for a judgment as a

matter of law. The Bank contends that the jury's finding of negligence against the Bank cannot stand as a matter of law because in the circumstances of this case, the Bank, as a mortgagee, owed no duty to Morrow, who was a mortgagor, but not a borrower. The Bank also contends that, as a matter of law, there was no fiduciary duty or confidential relationship between itself and Morrow to warrant the jury's finding that such a fiduciary duty or confidential relationship was breached.

[¶ 2] Morrow cross-appeals contending that the trial court erred when it granted the Bank's M.R. Civ. P. 50(a) motion during the trial with respect to her claims that the Bank violated an implied covenant of good faith and fair dealing and that there was an implied agency relationship.[1] Morrow also argues that the trial court erred in failing to allow the jury to consider evidence of attorney fees incurred by Morrow in collateral litigation that she alleges were proximately caused by the conduct of the Bank.[2] We affirm the judgment in part, and vacate the judgment in part.

## I. BACKGROUND

[¶ 3] Viewing the evidence in the light most favorable to the jury verdict, the record establishes the following facts. *See Searles v. Fleetwood Homes of Pa., Inc.,* 2005 ME 94, ¶ 2, 878 A.2d 509, 513. In 2004, Morrow was living with Orville Patterson Jr., in Bangor, at his residence. Morrow and Patterson were the parents of twin children and were in need of a larger living space.

[¶ 4] Morrow and Patterson discussed with Joseph Dipaolo, the President of Crest Construction, Inc., their desire to construct a home down the street from their residence on Kittridge Road. Morrow contracted with Dipaolo on June 12, 2004, for Crest to build the house for $265,000.

[¶ 5] Morrow and Dipaolo purchased the property from Patterson, holding the property as joint tenants in order to facilitate financing the construction of the house. Dipaolo, acting for Crest, applied for financing for the project through Camden National Bank, and Crest, not Morrow, was the borrower. The Bank required Morrow, as the prospective buyer of the house, to submit documents regarding her pre-approval for takeout financing as a prerequisite to the construction loan to Crest, but the loan was made to Crest and not to Morrow.

[¶ 6] Dipaolo was in his mid-twenties, had limited experience as a builder, and had no substantial assets of his own. Dipaolo's credit report stated that he had "serious delinquency," as the result of getting behind on personal car payments and a mortgage. The Bank's loan officer, Larry Quinn, was aware of those facts, but overrode the recommendation of the Bank's credit department, and approved the mortgage loan to Crest.

[¶ 7] The first loan from the Bank to Crest was made on July 13, 2004, and was in the amount of $162,723. The second loan was for $70,000. The mortgages were executed by Dipaolo in his capacity as President of Crest Construction, Inc. Because she was a joint owner of the property, Morrow also signed the mortgage deeds in her individual capacity. The

---

1. Morrow also contends that the Bank's appeal was not filed in a timely manner. This is in part a foreclosure action, and the judgment of foreclosure referred to the future entry of a final judgment. In view of the wording of the judgment, the Bank's appeal was timely filed.

2. Because there was no legal basis for the jury to find negligence on the part of the Bank or the existence of a fiduciary duty or a confidential relationship, we need not address Morrow's argument regarding attorney fees incurred by her in collateral litigation.

Bank did not, nor was it permitted to, share information with Morrow regarding the loan.

[¶ 8] About a week after Morrow signed the documents necessary for the $70,000 loan, Morrow and the Bank reviewed the invoices and discovered that even though there were invoices and money had been disbursed, many things had not been done: there was no power on site; there was no well installed; there were no kitchen cabinets; the wiring was only rough and unfinished; there was no plumbing, the septic tank was not completely set-up; there were no interior doors; there was no trim on or around the doors; the flooring was not down; and there was no sheetrock. It was at that time that Quinn first visited the site and learned that much of the work had not been completed.

[¶ 9] Morrow and Dipaolo had a falling out, and Dipaolo did no further work on the property. On December 20, 2004, the Bank filed a complaint for foreclosure against Dipaolo and Morrow. Morrow filed counterclaims against the Bank alleging negligence, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, and breach of implied agency by the Bank. The court entered an order and judgment of foreclosure in favor of the Bank after a bench trial on the issue. During the jury trial on the counterclaims, the court granted the Bank's Rule 50(a) motion with respect to Morrow's claims that the Bank violated an implied covenant of good faith and fair dealing and that there was an implied agency relationship. At the close of the evidence, the jury returned a verdict in favor of Morrow for $54,072, on her counterclaims for negligence, and breach of fiduciary duty. After the jury returned its verdict, the court orally granted the Bank's Rule 50(b) motion for judgment as

a matter of law as to Morrow's counterclaims for negligence and breach of fiduciary duty. The next day the court *sua sponte* reversed that ruling, vacated its Rule 50(b) judgment, and directed the clerk to enter judgment in favor of Morrow on her counterclaim in the amount of the jury verdict plus interest and costs. This appeal by the Bank as well as Morrow's cross-appeal followed.

## II. LEGAL ANALYSIS

### A. Negligence

[¶ 10] The Bank contends that the court erred in vacating its prior ruling on the Bank's Rule 50(b) motion as to the counterclaim for negligence, and in restoring the jury verdict based on the finding that the Bank was negligent. In order for a party to be negligent, there has to be a breach of the duty of care. "Whether a party owes a duty of care is a question of law that we review de novo." *Benham v. Morton & Furbish Agency,* 2007 ME 83, ¶ 14, 929 A.2d 471, 474.

[¶ 11] No duty of care by the Bank to Morrow arose in the circumstances of this case. While the Bank was aware that Morrow had a contract with Crest and Dipaolo, and that Morrow had an interest in the financing arrangement between Crest and the Bank, and although it required Morrow to provide documentation of pre-approval for a takeout loan, nevertheless, the Bank did not loan money to Morrow. Morrow signed the mortgage deeds and was a mortgagor, but no lender-borrower relationship existed between her and the Bank. A mortgagee-mortgagor relationship does not, without more, create a duty of care between a bank and a customer. *See, e.g., Morris v. Resolution Trust Corp.,* 622 A.2d 708, 712 (Me.1993) (upholding a jury's finding of a fiduciary duty between a lender and a borrower).

[¶ 12] Extending a duty of due care to the Bank would substantially change the role of the Bank in a mortgage loan transaction such as this one, and would require the mortgagee Bank to assume the role of supervisor of the construction job, with duties similar to those of a clerk of the works. Rather than disbursing money according to the Bank's own policies and procedures, the Bank would be responsible for assuring the timeliness and quality of the work being performed. Absent an explicit agreement to undertake these obligations, we are reluctant to impose such an expansive legal duty on a mortgagee in a case such as this. Accordingly, because the Bank owed no duty of care to Morrow, in this case, Morrow has no cognizable claim for negligence against the Bank.

B. Breach of Fiduciary or Confidential Relationship

[¶ 13] The Bank also contends that the facts of this case do not support the existence of a confidential or fiduciary relationship between Morrow and the Bank. "The salient elements of a confidential relation are the actual placing of trust and confidence in fact by one party in another and a great disparity of position and influence between the parties to the relation." *Ruebsamen v. Maddocks,* 340 A.2d 31, 35 (Me.1975).

> Standing alone, a creditor-debtor relationship does not establish the existence of a confidential relationship. To demonstrate the necessary disparity of position and influence in such a bank-borrower relationship, a party must demonstrate diminished emotional or physical capacity or ... the letting down of all guards and bars. We cannot overthrow the findings of the trial court simply because the parties were mature individuals in full possession of their faculties. Confidential relations can, and do, exist between such people.

> On the other hand, an allegation of one party's inexperience or trust will not by itself warrant an adjudication of a confidential relation without a statement of the facts indicating the actual placing of confidence and trust, and the abuse of the relation.

*Stewart v. Machias Sav. Bank,* 2000 ME 207, ¶ 11, 762 A.2d 44, 46 (internal citations and quotation marks omitted).

[¶ 14] We have upheld the finding of such a relationship between a lender and a borrower when the loan officer professed superior knowledge of a contractor's integrity and work performance, the borrower placed her trust in that superior knowledge when she continued with the contractor rather than seeking an alternate contractor, and the loan officer had extensive prior experience with the contractor and knew about his financial position. *See Morris,* 622 A.2d at 712.

[¶ 15] In this case, the relationship between the Bank and Morrow was that of a mortgagee-mortgagor, and not a lender-borrower. If a lender-borrower relationship alone does not give rise to a fiduciary duty, then a relationship of a mortgagee-mortgagor alone likewise is not sufficient to create such a fiduciary duty.

[¶ 16] There is nothing in the facts here to indicate that the Bank had superior knowledge of Dipaolo's integrity or that Morrow placed her trust in the Bank's knowledge of Dipaolo. It was Dipaolo who approached the Bank after Morrow and Dipaolo had already contracted for construction of the house; the Bank did not vouch for Dipaolo as a contractor. Dipaolo, as the Bank's loan customer, was the only person to whom the Bank had a duty. Although the Bank was aware of Morrow's interest in the project, it was under no obligation to her; she was neither a borrower nor otherwise a customer of the

Bank. Therefore, even when the facts are viewed in the light most favorable to her, Morrow failed to present evidence from which a jury could conclude that a fiduciary duty or confidential relationship existed between the Bank and Morrow.

C. Motion for Judgment as a Matter of Law

[¶ 17] In her cross-appeal, Morrow contends that the Superior Court erroneously granted judgment to the Bank on its M.R. Civ. P. 50(a) motion for a judgment as a matter of law. She contends that the Bank breached an implied covenant of good faith and fair dealing and that an implied agency relationship existed with Morrow.

[¶ 18] Contrary to Morrow's contentions, the relationship between Morrow and the Bank is that of a mortgagor to a mortgagee of real estate and is not governed by the Uniform Commercial Code. *See* 11 M.R.S. § 9–1109(4)(K) (2007). There is no duty of good faith and fair dealing when a transaction of this nature is not governed by the U.C.C. *Haines v. Great N. Paper, Inc.*, 2002 ME 157, ¶ 15, 808 A.2d 1246, 1250. Accordingly, there was no implied duty of good faith and fair dealing, and the trial court properly granted judgment as a matter of law as to that count of the counterclaim.

[¶ 19] Morrow also contends that there was an implied agency between her and the Bank and that the Bank was acting on her behalf. We disagree.

Agency is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. The relationship of agency, however, may be either "actual" or "apparent" in its derivation. Moreover, there are two types of *actual* authority—express authority or implied authority.

*Libby v. Concord Gen. Mut. Ins. Co.*, 452 A.2d 979, 981 (Me.1982). Implied authority is actual authority circumstantially proved from the facts and circumstances attendant to the transaction, such as the words used or the customs and relations of the parties. *Id.* at 982. Implied authority depends on a manifestation of consent by the principal and goes to the perceptions of the agent not the third party. *Id.*

[¶ 20] The evidence in this case does not support a finding that Morrow manifested consent to the Bank to act as her agent, or that the Bank believed itself to be the agent of Morrow. Accordingly, the trial court properly granted the Bank's Rule 50(a) motion for judgment as a matter of law on that count of the counterclaim.

The entry is:

Judgment on Morrow's counterclaims regarding the implied covenant of good faith and fair dealing and implied agency relationship is affirmed. Judgment on Morrow's counterclaims as to negligence and breach of confidential relationship or fiduciary duty is vacated, and remanded to the Superior Court for entry of a judgment in favor of Camden National Bank.