STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-RE-14-01 ✓

OCEANIC INN, INC. and ARMAND
VACHON,

        Plaintiffs,

    v.

SLOAN'S COVE, LLC,

        Defendant

and

PETER FESSENDEN, Chapter 13 Trustee,
and JEFF CORBIN

        Parties-in-Interest

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFF'S ACCOUNTING CLAIM

The Motion for Summary Judgment filed by Defendant Sloan's Cove, LLC ["Sloan's Cove"] regarding Count IX-Action for Accounting of the Plaintiffs' Complaint is before the court, together with the Plaintiffs' opposition and Sloan's Cove's reply memorandum. The court elects to decide the Motion without oral argument, *see* M.R. Civ. P. 7(b)(7).

The parties agree that, in context, the Plaintiffs' claim for an accounting is simply a claim for justification of any and all amounts claimed and/or received by Sloan's Cove in connection with the Note and Mortgage, as modified by the Allonge and Modification Agreement ["the Allonge"] between Sloan's Cove and Plaintiff Armand Vachon, now held by Sloan's Cove and the power of sale foreclosure conducted by Sloan's Cove of the Oceanic Inn property owned by Mr. Vachon.

1

The Note was originally given in January 2006 by Proulx Real Estate Investment Limited Liability Company ["Proulx Real Estate"], an entity controlled by Mr. Vachon's mother and stepfather, to TD BankNorth, N.A. ["TD"]. The Note was secured by mortgages given by Proulx Real Estate Investment Company and Plaintiff Oceanic, Inn, Inc. In November 2009, TD assigned its rights under the Note and mortgages to Sloan's Cove. Around the same time, Sloan's Cove as the lender's assignee and Mr. Vachon entered into the Allonge and Modification Agreement. By virtue of the Allonge, which is dated November 12, 2009, Mr. Vachon agreed to assume the borrower's obligations on the Note, as modified by the Allonge. The mortgages remained in place.

The underlying facts culminating in Sloan's Cove's sale of the Oceanic Inn property through a power of sale foreclosure are summarized in detail in the court's Order on Amended Motion for Summary Judgment of Defendant Sloan's Cove dated October 15, 2014. That summary is incorporated by reference here rather than being repeated.

Sloan's Cove claims that it is entitled to recover and retain the following amounts against Mr. Vachon:

- $284,500 reflecting the principal balance due on the Note. This is the same amount that the Allonge between Sloan's Cove and Mr. Vachon identifies as the outstanding balance due as of the date of the Allonge, November 12, 2009.

- Accrued interest on the Note at both a regular interest rate and a default interest rate

- Attorneys fees and costs of collection

- $2,990 for "insurance reimbursement" alleged to be due to Sloan's Cove under a settlement agreement between it and Mr. Vachon

Mr. Vachon disputes all of these claims except that for the principal amount due.

2

The remaining three are addressed in the order just stated. Because Sloan's Cove's Motion seeks summary judgment, Sloan's Cove must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* M.R. Civ. P. 56.

1. *Sloan's Cove's Interest Claim*

The Note given by Proulx Real Estate to TD called for an "interest rate" of 7.47% annually and a "default interest rate" of 6% annually over and above "the rate of interest otherwise payable." The Allonge includes the following pertinent provisions:

2. Terms of Note. The Lender and the Borrower hereby agree to modify the terms of the Note as follows:

(a) *Amount* . . .

(b) *Interest:* Interest under the Note shall accrue on the amount specified in subparagraph (a), or such other amount as may be outstanding under the terms of the Note from time to time after the effective date, at the rate per annum equal to the Wall Street Journal Prime Rate plus three percent (3%), adjusted monthly.

(c) *Payment Schedule:* . . .

(d) *Payment Address* . . .

3. No Other Modifications. The Borrower and the Lender hereby agree that the indebtedness evidenced by the Note, as modified hereby, shall be and hereby is the same indebtedness evidenced by said Note, and this Allonge represents a modification and renewal of the original indebtedness evidenced under the Note and the Security Documents and is not a novation. The Note shall otherwise remain unmodified, and the Borrower hereby affirms its obligations under the Note and stipulates that the Note as modified by this Allonge is in full force and effect and that there are no offsets or defenses with respect to the amounts outstanding and due hereunder.

The dispute relating to Sloan's Cove's claim for interest on the Note centers on the fact that the default interest provisions of the Note are omitted from the above-quoted interest provision at section 2(b) of the Allonge. Mr. Vachon construes section 2(b) of the Allonge to replace the interest provisions of the Note, whereas Sloan's Cove asserts that section 2(b) only modifies the regular interest rate due under the Note and leaves the default interest provision unchanged.

3

Neither party's filings contend that the omission of any reference to default interest in the Allonge is ambiguous. The court agrees: the Allonge is by no means ambiguous—it clearly provides for interest on the Note to accrue at prime plus 3%, and it clearly contains no reference to, or provision for, default interest. In other words, there is no ambiguity regarding default interest on the face of the Allonge; any ambiguity arises only when the interest provision in the Allonge is compared to the counterpart provision in the Note.

Moreover, even to the extent that comparison is deemed to raise an ambiguity that could be resolved by extrinsic evidence, neither party has proffered any extrinsic evidence to resolve it. Sloan's Cove's filings include an affidavit from its principal, Pauline Beale, and Mr. Vachon's opposition includes his own affidavit, but neither addresses the question of what was intended by the Allonge modification of the Note interest provisions.

Sloan's Cove's interpretation finds some support in the fact that the Note contains two headings relating to interest: "Interest Rate" and "Default Interest Rate," whereas the Allonge purports to modify "interest" but not "default interest."

Sloan's Cove also points to the section 3 "No Other Modifications" provision in support of its argument that the modification of "interest" does not include default interest. Sloan's Cove notes that section 3 recites that the Allonge effectuates a modification, not a novation. However, the interest provisions of the Note could be modified to eliminate default interest without constituting a novation. Ultimately, the "No Other Modifications" provision begs the question presented here.

Mr. Vachon's interpretation finds strong support in the fact that the Allonge is clear within its four corners, in providing for "[i]nterest under the Note" to accrue at the stated prime plus 3% rate. Moreover, even were there deemed to be an ambiguity raised by comparing the interest terms of the Allonge with those of the Note, Mr. Vachon's

4

interpretation is further bolstered by what the Law Court has termed the "bedrock rule of contract interpretation ☐ that ambiguities in a document are construed against its drafter." *Barrett v. McDonald Investments, Inc.*, 2005 ME 43, ¶ 17, 870 A.2d 146, 150, *citing* 11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 32:12 at 471-72 (4th ed. 1999) ("Since the language is presumptively within the control of the party drafting the agreement, it is a generally accepted principle that any ambiguity in that language will be interpreted against the drafter."). Mr. Vachon's affidavit recites, without contradiction by Sloan's Cove, that the Allonge was drafted by Sloan's Cove's counsel.

In *McDonald*, the court explained the justification for construing contracts against the drafter by quoting from its decision in *Monk v. Morton*, 139 Me. 291, 30 A.2d 17 (1943):

> The rule that an ambiguous contract will be construed more strongly against him who uses the words concerning which doubt arises, is more than an arbitrary rule. Its purpose is to give effect to the intention of the parties. To the maker of an instrument is available language with which to adequately set forth the terms thereof. It is presumed that he will not leave undeclared that which he would claim as his right under the agreement; and the absence of a requirement against the obligee is evidence that such requirement was not within the understanding of the parties. He who speaks should speak plainly, or the other party may explain to his own advantage.

*Id.* at 295-96, 30 A.2d at 19 (quotation marks omitted).

The fact that the Allonge modifies the Note by defining "interest under the Note" without reference to default interest is evidence, as stated in the *Monk* opinion, "that such requirement was not within the understanding of the parties." *Id.*

For all of the above reasons, the court construes the Allonge to entitle Sloan's Cove to interest at the only rate specified in the Allonge—prime plus 3% interest. This outcome makes it unnecessary to address Mr. Vachon's alternative arguments against default interest—that Sloan's Cove never effectively triggered it, and that it is an unenforceable penalty.

5

### 2. *Sloan's Cove's Claim For Attorney Fees and Costs*

Mr. Vachon presents two primary arguments against Sloan's Cove's claim for attorney fees and costs. One is that the fees and costs attributable to Sloan's Cove's involvement in the first bankruptcy proceeding initiated by Oceanic Inn, Inc. should be excluded. The other is because the fees reflect "block billing" and duplicative effort on the part of Sloan's Cove's attorneys.

The first argument has facial plausibility because it was Mr. Vachon, not the debtor in bankruptcy, Oceanic Inn, Inc., who owned the property that Sloan's Cove ultimately foreclosed upon. However, Oceanic Inn, Inc. identified itself as the owner of the mortgaged property, and Oceanic Inn, Inc. had given the original mortgage securing the Note. Thus, at a minimum, Sloan's Cove would likely have needed to obtain relief from the automatic stay in order to proceed with the power of sale foreclosure. Also, as Sloan's Cove points out, Mr. Vachon bears at least partial responsibility for the confusion about which entity owned the property ultimately foreclosed on because he identified Oceanic Inn, Inc. as the owner.

The court concludes that Sloan's Cove should be entitled to recover some, but not all of the attorney fees it incurred in the first Oceanic bankruptcy proceeding, and also concludes that Sloan's Cove's is not entitled to recover all fees incurred by all attorneys and other timekeepers who worked on the matter over its entire course. The court awards Defendant $59,000 in attorney fees based on the contractual entitlement contained in the Allonge and Modification Agreement, together with all costs requested by Defendant. Oceanic's and Mr. Vachon's other objections to fees do not require separate discussion.

### 3. *Sloan's Cove's Claim for Insurance Reimbursement*

In addition to its claim for attorney fees, costs and interest, Sloan's Cove has claimed $2,990 allegedly due to it from Mr. Vachon pursuant to a settlement agreement. Mr. Vachon

disputes the claim. The court does not view this claim as being within the scope of the accounting, which addresses the foreclosure. The Comprehensive Settlement Agreement is not before the court, and, as noted above, the court has always understood the accounting to be limited to the amounts claimed by Sloan's Cove under the note and mortgage as modified by the Allonge. Were the court to consider the insurance reimbursement claim on its merits, it would deny summary judgment to either party. However, because the court does not view the claim as being within the scope of this case, the court is dismissing the claim and thus making no determination of any kind on the merits of the claim. As a result, this order constitutes a final, appealable order as far as the court is aware because it adjudicates all claims within the scope of the case that remained pending after the previous summary judgment ruling.

IT IS ORDERED, ADJUDGED AND DECLARED AS FOLLOWS:

1. The Motion for Summary Judgment filed by Defendant Sloan's Cove, LLC regarding Count IX-Action for Accounting of the Plaintiffs' Complaint is hereby granted in part, and otherwise denied. A comprehensive Judgment on all claims is being entered separately.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated January 2, 2015

A. M. Horton, Justice

Entered on the Docket: 1/5/15
Copies sent via Mail ___ Electronically ✓

7

**Oceanic Inn, Inc. and Armand Vachon v. Sloan's Cove, LLC, et al.**
**BCD-RE-14-01**

**Oceanic Inn, Inc. and Armand Vachon**
    **Petitioner / Plaintiff**

      Counsel:           John Campbell, Esq.
                             59 Baxter Boulevard
                             Portland, ME 04101


**Sloan's Cove, LLC**
    **Respondent / Defendant**

      Counsel:           Daniel Cummings, Esq.
                             Two Canal Plaza
                             PO Box 4600
                             Portland, ME 04112-4600


**Chapter 13 trustee**
    **Party In Intrest**        Peter Fessenden, Esq


**Jeff Corbin**
    **Party in Intrest**        Pro-se

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-RE-14-01

OCEANIC INN, INC. and ARMAND
VACHON,

      Plaintiffs,

      v.

SLOAN'S COVE, LLC,

      Defendant

and

PETER FESSENDEN, Chapter 13 Trustee,
and JEFF CORBIN

      Parties-in-Interest

## *ORDER ON AMENDED MOTION FOR SUMMARY JUDGMENT OF DEFENDANT SLOAN'S COVE*

Pursuant to M.R. Civ. P. 56, Defendant Sloan's Cove, LLC [Sloan's Cove] has filed an

Amended Motion for Summary Judgment on Count I of the complaint of Plaintiffs Oceanic Inn,

Inc. ["Oceanic"] and Armand Vachon, alleging breach of contract, and on Sloan's Cove's

counterclaim for declaratory judgment. Sloan's Cove's motion does not seek summary

judgment on Count IX of the Complaint, for accounting.

At Plaintiffs' request, their obligation to respond to Sloan's Cove's motion was deferred

pursuant to M.R. Civ. P. 56(f) in order for Plaintiffs to take certain discovery. Plaintiffs have

now filed an Opposition to the Motion and Sloan's Cove has filed a reply memorandum.

1

*BACKGROUND*

This Order is based on the following facts, most of which are undisputed, with disputed facts noted.

Plaintiff Armand Vachon is the principal and sole shareholder of Oceanic, a Maine corporation. Sloan's Cove is a Maine limited liability company wholly owned by Pauline Beale, Vachon's sister. For several years, Vachon and Beale have been involved in litigation surrounding the probate of their mother's estate, of which Beale is the personal representative. The relationship between brother and sister is contentious.

The real estate at issue in this case is a 15-unit motel, pub and café, collectively doing business as the Oceanic Inn and located at 43 West Grand Avenue in Old Orchard Beach. The real estate is assessed by the Town for approximately $650,000, and Vachon estimates its replacement value to be in the range of $1.5 million.

Prior to 2007, Oceanic owned the real estate and Vachon was the principal of Oceanic and operated the motel, pub and café business for many years. However, sometime around 2006-07, when Vachon, according to his affidavit, was having emotional problems, his mother and stepfather, Georgette Proulx and Gerald Proulx, became involved as principals in the Oceanic corporation and evidently operated the business for a time. The details of their involvement are not clear in the record. They apparently had their own operating entity, Proulx Real Estate Investment, LLC.

In 2006, Oceanic, acting through Georgette and Gerald Proulx, executed a mortgage and note on its real property in Old Orchard Beach in favor of TD Banknorth, N.A. Proulx Real Estate Investment, LLC was also involved in the transaction. In 2007, Oceanic conveyed the real estate to the Proulxs, who immediately conveyed it to Mr. Vachon, both deeds being

2

dated April 6, 2007. From these events, it can be inferred that Vachon had returned to an active role in operating the Oceanic Inn.

In November 2009, TD Banknorth, N.A. assigned the note and mortgage to Sloan's Cove pursuant to a settlement agreement to satisfy Oceanic's debts. The settlement agreement called for Oceanic and Vachon to make interest only payments to Sloan's Cove for three years and then a balloon payment.

As part of the settlement and consistent with Vachon's ownership of the real estate, Sloan's Cove and Armand Vachon entered into an Allonge and Modification Agreement dated November 12, 2009. Pursuant to express terms of the Allonge and Modification Agreement, Vachon became the sole obligor under the note, and acknowledged and ratified the mortgage, waiving all defenses to its enforceability.

All interest only payments due under the settlement were paid in a timely fashion to Sloan's Cove, but in November of 2012, Oceanic and Vachon were unable to make the balloon payment when it became due.

Meanwhile, Vachon and his sister, Pauline Beale, the principal of Sloan's Cove, were also involved in litigation for years regarding the conservatorship of their mother and then regarding her estate. Vachon has been represented in the conservatorship and estate litigation by attorney John Campbell. According to Vachon's affidavit and Plaintiffs' Statement of Additional Material Facts, one of the issues in the conservatorship/estate litigation has been Beale's claim that Vachon had wrongfully induced the Proulxs to convey the Oceanic Inn real estate to him in 2007:

> [Beale and her attorneys] had claimed falsely that I had taken advantage of my mother and stepfather and that the Oceanic Inn should be considered to be not my property but the property of Oceanic Inn, Inc. which stock was owned by my mother and step father.

Vachon Affidavit ¶ 8 (emphasis in original).

In November 2012, when Vachon missed the balloon payment due to Sloan's Cove under the 2009 settlement agreement, Vachon and Oceanic, of which Vachon was once again the sole shareholder, retained attorney Joseph Goodman to represent them. For reasons not clear in the record, Vachon apparently never informed attorney Goodman that he, not Oceanic owned the real estate.[1] Attorney Joseph Goodman believed that Oceanic owned the property and was still liable on the note and mortgage.

In December of 2012, attorney Goodman on behalf of Oceanic filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and listed Sloan's Cove as its only secured creditor. The purpose of the filing was to invoke the automatic stay and allow Oceanic time to formulate a plan to pay its debts without apprehension of foreclosure. Oceanic proposed a plan with the Bankruptcy Court to resolve its debt, but Sloan's Cove objected, and the case was ultimately dismissed. Throughout the proceeding, Sloan's Cove and Oceanic, as well as the bankruptcy court, treated the real estate as owned by Oceanic rather than Vachon individually.

During 2012 and well into 2013, attorneys for the three parties to this case were in frequent communication. By then, Sloan's Cove was represented by attorneys Daniel Cummings and John Bonneau.

Sometime during the summer of 2013, Sloan's Cove decided to exercise its power of sale pursuant to the mortgage now held by it. In an internal e-mail dated August 8, 2013, attorney Cummings asked a corporate/real estate paralegal in his law firm to ascertain ownership of the real estate for purposes of foreclosing on the mortgage. The paralegal responded the same day, advising that Vachon was the record owner, and that there was a "Clerk's Certificate on record claiming a fraudulent transfer," *see* Exhibit A to Campbell Affidavit.

---

[1] Vachon's affidavit says that his observation of the 2012-13 bankruptcy proceeding indicated that "everyone was treating the Inn as being the property of the corporation . . ." Vachon Affidavit ¶¶ 8, 16. It never, however, says that he did not know, or had forgotten, that he owned the Inn real estate.

There is nothing in the record to indicate that Sloan's Cove's attorneys had actual knowledge of who or what owned the real estate prior to August 8, 2013, whereas Vachon and Beale plainly knew that Vachon owned it because his ownership was an issue in the litigation with Beale.

On August 19, 2013, attorney Cummings on behalf of Sloan's Cove, sent two documents and a cover letter via registered mail, addressed to Armand Vachon and mailed to Vachon at the Oceanic property rather than to Vachon's home address. The cover letter was addressed to Armand Vachon. One of the two documents was a notice of mortgagee's sale of real estate pursuant to the power of sale provisions of the mortgage and note granted by Oceanic to TD Bank and now held by Sloan's Cove. The other document was titled Notice of Intention to Foreclose and Liability for Deficiency After Foreclosure of Mortgage, and it was addressed to both Vachon and Oceanic. Both documents indicated that Sloan's Cove intended to foreclose on the mortgage given by Oceanic to TD Banknorth, N.A. pursuant to the power of sale provisions of the mortgage, and to hold the sale September 13, 2013.

Although Vachon refused to sign for Sloan's Cove's August 19 mailing, there is no dispute that he and Oceanic received actual notice of Sloan's Cove's intent to exercise the power of sale. Prior to the sale, Sloan's Cove recorded the notice of sale in the York County Registry of Deeds and caused it to be published in the Portland Press Herald for three successive weeks.

Attorney Cummings for Sloan's Cove and Attorney Goodman for Vachon and Oceanic were in communication regarding possible alternatives to the sale up to the morning of September 13. During those communications, Attorney Cummings suspected that attorney Goodman was under the mistaken belief that Oceanic rather than Vachon owned the real estate, and never told attorney Goodman that he had learned that Vachon rather than Oceanic owned the real estate.

5

The day before the scheduled September 13 sale, attorney Cummings asked the paralegal in his firm to update ownership of the real estate, and she reported back that record ownership remained with Vachon.

As scheduled in the notice of sale, Attorney Cummings conducted the power of sale foreclosure auction on behalf of Sloan's Cove on September 13, 2013. Attorney Cummings is not an auctioneer licensed by the State of Maine. The auction was held at 55 West Grand Avenue, Old Orchard Beach, a very short distance from the real estate being auctioned.

In an attempt to stop the auction, Oceanic filed a second voluntary petition for relief under chapter 11 of the U.S. Bankruptcy Code, again listing Sloan's Cove as the only creditor, and alerting Sloan's Cove of the filing before the auction began. Attorney Cummings alerted the bidders at the auction that a bankruptcy case had been filed, but stated he anticipated he would be able to consummate a sale. He also clarified that only real estate and fixtures to the real estate were being sold, and that no personal property (other than fixtures attached to the real estate) would be sold.

Three prospective buyers registered and paid the required $25,000 deposit to bid, and two of the three actually bid. Bidding started at $345,000, and the two bidders bid the price upward. The winning bid of $455,000 was submitted by Jeff Corbin. After the sale, Corbin executed a purchase and sale agreement, and satisfied Sloan's Cove of his ability to close on the purchase.

Plaintiffs filed suit in York County Superior Court on September 24, 2013. The case was approved for transfer to the Business and Consumer Docket on October 24, 2013. As a result of the uncertainty caused by this litigation, Corbin has requested to defer the closing on his purchase, and Sloan's Cove has granted him multiple extensions of the closing deadline.

For Sloan's Cove to obtain summary judgment on Count I of the complaint and on its counterclaim for declaratory judgment, it must establish that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶4, 770 A.2d 653.

An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶4, 869 A.2d 745 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶2, 845 A.2d 1178). Any ambiguities "must be resolved in favor of the non-moving party." *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶2, 796 A.2d 683 (citing *Green v. Cessna Aircraft Co.*, 673 A.2d 216, 218 (Me. 1996)).

Summary judgment is appropriate on issues such as motive or intent "if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Dyer v. Dept. of Transp.*, 2008 ME 106, ¶14, 951 A.2d 821 (quoting *Vives v. Fajardo*, 472 F.3d 19, 21 (1st Cir. 2007)) (quotations omitted).

To survive a motion for summary judgment on a claim as to which the non-moving party has the burden of persuasion, the non-moving party must make out a *prima facie* case on each element of the claim that the motion puts into contention. *See Quirion v. Geroux*, 2008 ME 41, ¶9, 942 A.2d 670 (negligence claim); *Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp.* 2005 ME 29, ¶9, 868 A.2d 220 (subrogation); *Rippett v. Bemis*, 672 A.2d 82, 84 (Me. 1996) (defamation).

The allocation of the burden of persuasion merits brief discussion. Plaintiffs have the burden to prove their breach of contract claim in Count I, including their claims of failure to act in good faith and failure to engage in fair dealing. Who has the burden on Sloan's Cove's declaratory judgment counterclaim to validate the foreclosure sale is less clear. In the court's

view, Sloan's Cove has the burden on its counterclaim to make a *prima facie* showing that its power of sale foreclosure was compliant with the power of sale provision of the mortgage and also the power of sale statutes. *See* 14 M.R.S. §§ 6203-A *et seq.;* 33 M.R.S. § 501-A. To defeat Sloan's Cove motion, as it relates to Sloan's Cove's declaratory judgment counterclaim, Plaintiffs do not need to overcome that *prima facie* showing, but they do have to demonstrate a genuine issue of material fact as to whether Sloan Cove's foreclosure procedure was valid.

## DISCUSSION

In moving for summary judgment on Count I of the complaint and on its declaratory judgment counterclaim, Sloan's Cove is essentially asking the court to declare that the power of sale foreclosure, as conducted, was valid and effective.

Count I of the complaint is styled as a breach of contract claim, but, as this court has already observed in its Order on Sloan's Cove's Motion to Dismiss, the alleged breach consists of Sloan's Cove's allegedly wrongful and improperly conducted power of sale foreclosure. For that reason, Sloan's Cove's characterization of Count I and its declaratory judgment counterclaim as each being the mirror image or "flip side" of the other is mostly, but not entirely, correct. It is only partly correct because Plaintiffs' breach of contract claim reaches more broadly than the Defendant's counterclaim, in that some of the alleged breaches predate the foreclosure that the counterclaim seeks to validate.

The breaches of contract alleged in the complaint are:

- Failure to provide payoff information on request;
- Failure to act in good faith and with fair dealing;
- Failure to hold a commercially reasonable auction;
- Failure to notice the sale of the property properly; and
- Failure to conduct of power of sale foreclosure in compliance with statutory requirements and/or on commercially reasonable terms.

(Compl. ¶¶ 69-76.)

8

Of these, only the first, relating to payoff information, and potentially the second, failure to act in good faith and with fair dealing, relate to matters occurring prior to Sloan's Cove's power of sale foreclosure procedure. The others all relate to the conduct of the power of sale foreclosure itself. Accordingly, this analysis focuses, first, on issues predating Sloan Cove's initiation of the power of sale foreclosure, and second, on the foreclosure process.

### 1. *Issues Prior to the Foreclosure*

In their Opposition, Plaintiffs focus at some length on the conflict between Vachon and his sister and on other alleged wrongdoing by Vachon's stepfather. In the court's view, none of the issues in the Beale-Vachon dispute is material to this case. Whatever the issues between Plaintiff and his sister or his stepfather, the following facts are undisputed:

- Sloan's Cove succeeded to TD Banknorth's rights under the note and the mortgage;

- Vachon in the Allonge and Modification Agreement, consented to Sloan's Cove becoming his creditor on the note and mortgage;

- Vachon in the Allonge and Modification Agreement acknowledged and ratified the note and mortgage in the hands of Sloan's Cove and agreed that they were enforceable against him; and

- Vachon has not made the balloon payment he agreed to pay.

By statute, the validity of a power of sale in a mortgage granted by a corporation is not affected by the subsequent transfer of the mortgaged real estate to an individual. *See* 14 M.R.S. § 6203-A ("Any power of sale incorporated into a mortgage is not affected by the subsequent transfer of the mortgaged premises from the corporation, partnership, including a limited partnership, limited liability company or trustee of the trust to any other type of organization or to an individual or individuals."). Thus, Sloan's Cove was entitled to enforce the note and mortgage against Vachon, and nothing in the record before the court raises an issue about lack

9

of good faith and fair dealing, prior to the events surrounding the foreclosure, which are addressed below.

Regarding Sloan's Cove's actions during the 2012-13 Oceanic bankruptcy proceeding, Plaintiffs attempt to generate issues of good faith and fair dealing by arguing that Sloan's Cove blocked Oceanic's efforts to have a plan of reorganization approved, including acquiring unsecured debt so as to block a "cram down" approval. Because these allegations relate to Oceanic and not to Sloan Cove's claims against Vachon, and also because any objection to Sloan Cove's tactics could presumably have been, and may have been, raised in the Bankruptcy Court, they do not suffice to raise a genuine issue here.

As to Sloan's Cove's alleged failure or refusal to provide payoff information, assuming that the refusal did occur as alleged, Vachon has not made any showing by affidavit or otherwise that, had such information been provided, he could or would have made payment of the amount due on the note. Thus, assuming further that a refusal to provide payoff information is a breach of contract, this was not a breach that caused any damage or harm. A breach of contract that does not result in any harm or loss is not actionable. *See Tobin v. Barter*, 2014 ME 51, ¶ 10, 89 A.3d 1088 ("In order to obtain relief for a breach of ☐ contract, the plaintiff must ☐ demonstrate that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages.").

For these reasons, the court concludes that Plaintiffs have not made a *prima facie* showing that Sloan's Cove committed any breach of contract prior to initiating the foreclosure process, and thus that Sloan's Cove is entitled to summary judgment on the pre-foreclosure aspect of the Plaintiffs' breach of contract claim in Count I.

10

## 2. *Issues Relating to the Foreclosure*

With regard to Sloan's Cove's power of sale foreclosure, the Plaintiffs raise numerous issues, any one of which, they claim, is sufficient to invalidate the foreclosure and thus defeat Sloan Cove's motion, both as to Count I of Plaintiffs' Complaint and to the declaratory judgment counterclaim.

Regardless of the type of foreclosure, Maine law requires strict compliance with the governing statutes. *See KeyBank Nat. Ass'n v. Sargent*, 2000 ME 153, ¶ 36, 758 A.2d 528 ([I]n order to effect a legal foreclosure all steps required by the statute must be strictly performed") (citing *Winter v. Casco Bank and Trust Co.*, 396 A.2d 1020, 1024 (Me.1979)). However, the Law Court has suggested that in a foreclosure by civil action, the "strict compliance" doctrine is limited to the procedures leading to a foreclosure judgment and not to the procedure of the sale itself. *KeyBank*, 2000 ME 153, ¶ 38, 758 A.2d 528 (holding "any error in the *sale* process should not serve as grounds to set aside the foreclosure *judgment* itself. The "strict compliance" doctrine is limited to those procedures leading to the foreclosure judgment") (emphasis in original); *see also First Tracks Investments, LLC v. Sunrise Schoolhouse, LLC*, BCD-CV-11-31 (Bus. & Consumer Ct. Apr. 13. 2012).

In contrast, as this court stated in *First Tracks*, "the [Law Court's] stated rationale for not requiring strict compliance in the post-judgment foreclosure sale procedure is that, in a foreclosure by civil action, the mortgagee's right of redemption has already expired when the foreclosure sale takes place." *Id.* (citing 14 M.R.S.A. § 6323(1)) ("[A]ll rights of the mortgagor to possession terminate when the right of redemption expires."). However, in a power of sale foreclosure "the sale itself operates to terminate the mortgagor's rights in the

11

property."[2]  *Id.* "When the challenge is to the procedures used to conduct the foreclosure sale, the proper analysis for the trial court is whether it would be equitable to set aside the sale given the procedures that were employed by the mortgagee." *KeyBank,* 2000 ME 153, ¶ 38, 758 A.2d 528 (citing *Farm Credit of Aroostook v. Sandstrom,* 634 A.2d 961, 962-63 (Me. 1993)) (noting that action to set aside foreclosure sale "presumably rel[ies] on the equitable power granted to the court in actions to foreclose mortgages").

The Plaintiffs have raised four issues concerning the equities and commercial reasonableness of the subject sale. They allege: (1) Attorney Cummings, who presided over the sale, was not a licensed auctioneer; (2) the notice of the sale was presented to Vachon in his personal capacity and not to the corporate entity; (3) Corbin, the highest bidder, has been allowed too much time to close; and (4) the sale price was unreasonable, in that Sloan's Cove failed to sell the personal property along with the real estate, a step that would have enhanced the value of the real estate to prospective bidders. The court addresses each of these issues in turn below.

### i.    *Failure to Procure a Licensed Auctioneer*

In this case, attorney Cummings conducted the power of sale foreclosure auction on behalf of Sloan's Cove on September 13, 2013. The Plaintiffs contend that the sale was inequitable as attorney Cummings is not a licensed auctioneer under the laws of the State of

---

[2] In Maine, power of sale foreclosure is governed by 14 M.R.S § 6203-A. Under the statute, any holder of a mortgage on real estate that is granted by a corporate entity may, upon breach of condition, foreclose a mortgage and sell the subject real estate. However, prior to sale:

> [N]otice [must be] published once in each of 3 successive weeks, the first publication to be not less than 21 days before the day of the sale in a newspaper of general circulation in the town where the land lies and which notice must prominently state the street address of the real estate encumbered by the mortgage deed, if any, and the book and page number of the mortgage.

*Id.* Further, [t]he person selling shall, within 30 days after the sale, cause a copy of the notice as published and the person's affidavit . . . stating the person's acts, or the acts of the person's principal or ward, to be recorded in the registry of deeds for the county where the land lies." 14 M.R.S. § 6203-B.

12

Maine. Pursuant to 32 M.R.S. § 285, "[a] person in this State who engages in the business of auctioneering, professes or advertises to be an auctioneer or advertises the sale of real, personal or mixed property by auction shall hold a valid auctioneer's license." Thus, the Plaintiffs contend that because attorney Cummings failed to hold a valid auctioneer licenses, the auction sale should be set-aside as void. (Pl.'s Opp. Mot. 15.)

At the outset, it must be noted that the Plaintiffs' argument finds no support in the Maine power of sale foreclosure statute, which provides that any person acting in the name of the holder of the mortgage may exercise the power of sale. The "Statutory Power of Sale" provision at 33 M.R.S. § 501-A states: " [U]pon any default in the performance . . . the mortgagee or . . . [his or her] attorney, may sell the mortgaged premises . . . by a public sale on or near the premises then subject to the mortgage." *See also* 14 M.R.S. § 6203-A.

Although the Maine Law Court has not specifically decided the issue, the Superior Court has held that a foreclosure pursuant to a power of sale conducted by an attorney who was not a licensed auctioneer does not invalidate the sale. *See Ramsey v. Pepperrell Bank & Trust*, No. CV-05-234, 2007 WL 1523496 (Me. Super., Yor. Cty., Jan. 11, 2007) (noting "any penalty the attorney might face due to his lack of a license does not generate a cause of action for 'wrongful foreclosure' . . . and does not affect the overall validity of the sale"). Moreover, Massachusetts, among other jurisdictions, has long held that "[t]he fact that the auctioneer at the sale had not an auctioneer's license does not invalidate the sale." *Flynn v. Curtis & Pope Lumber Co.*, 139 N.E. 533, 536 (1923); *Williston v. Morse*, 51 Mass. 17, 21 (1845) ("An auction sale by one not licensed as an auctioneer will not avoid the conveyance to an innocent purchaser without knowledge that the auctioneer was not licensed, although it may render the seller liable to a penalty."); *Gorman v. Berg*, 141 A. 179 (R.I. 1928) (statute requiring auctioneer to be licensed does not invalidate auction sale by unlicensed auctioneer); *Associates Discount*

13

*Corp. v. Lunsford*, 204 Va. 1, 128 S.E.2d 924 (1963) (statute requiring auctioneers to be licensed did not affect validity of vehicle sale conducted by creditor's employee who did not hold license). *See also* 7A C.J.S. *Auctions and Auctioneers* § 47 ("A sale at auction is generally not invalid because it is conducted by a person not licensed as an auctioneer, even though the act of selling subjects such person to a penalty.")[3]

Further, the Maine licensing statute offers a remedy that extends to setting aside the foreclosure sale. Penalties for failing to procure an auctioneering license prior to conducting a sale are governed by the provisions of Title 10, section 8003-C. Said section provides both criminal and civil penalties. The civil penalties include "a fine of not less than $1,000 but not more than $5,000 for each violation." Additionally:

> The Attorney General may bring an action in Superior Court to enjoin any person from violating subsection 4, whether or not proceedings have been or may be instituted in District Court or whether criminal proceedings have been or may be instituted, and to restore to any person who has suffered any ascertainable loss by reason of that violation any money or personal or real property that may have been acquired by means of that violation and to compel the return of compensation received for engaging in that unlawful conduct.

10 M.R.S. 8003-C (5). Thus, there is no private cause of action under the licensing statute to justify this court in setting aside the foreclosure sale.

---

[3] Other commercial foreclosure statutes in Maine expressly authorize an attorney to auction property without mention of the licensing statute. For example, 33 M.R.S § 595(1)(2)(b), which governs the foreclosure of commercial timeshares states:

> The foreclosure sale must be by public auction, conducted by an <u>auctioneer or attorney</u> licensed to practice in the State. <u>At the discretion of the auctioneer or attorney</u>, the reading of the names of the time-share owners, if more than one, the description of time-share estates, if more than one, and the recording information, if more than one instrument, may be dispensed with.

(emphasis added). Note, the foreclosure of a commercial timeshare is not conducted pursuant to a court order and there is no exemption provided in the licensing statute for such sale. Thus, it can be inferred that the legislature specifically intended attorneys to have the ability to exercise a power of sale on behalf of his or her clients in the commercial timeshare foreclosure setting.

14

Based on the statutory provisions authorizing an attorney to conduct the foreclosure sale, and also because attorney Cummings was a duly authorized attorney of the mortgagee and because there is no private cause of action under 32 M.R.S. § 285, this court will not set aside the foreclosure sale on the ground that the sale was not conducted by a licensed auctioneer.

### ii. Issues Concerning Notice

Plaintiffs contend that the Defendant did not comply with the notice provision of 14 M.R.S. § 6203-A(1) which requires:

> A copy of the notice [to] be served on the mortgagor or its representative in interest, or may be sent by registered mail addressed to it or the representative at its last known address, or to the person and to the address as may be agreed upon in the mortgage, at least 21 days before the date of the sale.

Plaintiffs further contend that the notice provided in this case "was intended only for Mr. Vachon as owner, but it did not reveal anything about him being the owner and was not sent to [Vachon's] home address." (Pl.'s Opp. Mot. 17.) The court finds that notice was sufficient in this case. The notice was sent to a post office box that is used by both Oceanic and Vachon individually. The notice was addressed to Vachon and, although Vachon refused to sign, there is no dispute that Vachon had notice of Sloan's Cove's intent to foreclose by power of sale. Further, contrary to the Plaintiffs' contention, the above statute does not specify that the notice must be provided to an individual's home address.

Plaintiffs' contention that the Defendant had an obligation to present the Plaintiffs with information explaining that Vachon, a named Plaintiff, was the owner of the subject property is without merit. "The mere record of a valid mortgage gives constructive notice to all. All are presumed to know its contents, for any one interested can obtain knowledge by examining the

record."[+] *Globe Slicing Mach. Co. v. Casco Bank & Trust Co.*, 154 Me. 59, 63, 142 A.2d 30, 32 (1958) (quoting *Thurlough v. Dresser*, 98 Me. 161, 56 A. 654 (1903)). Thus, all interested parties are presumed to have had constructive notice of the true owner of the property at all points in time during this litigation. A quick review of the mortgage instrument and accompanying documents would have dispelled any confusion.

### iii. Failure to Default Corbin for Not Closing in a Timely Manner

Plaintiffs argue that the Defendant owes a fiduciary duty to enforce the terms of the sale. In this case, Corbin has not yet closed on the property after purchasing it at the power of sale foreclosure auction. However, the Law Court has long held that a lender owes a fiduciary duty to a borrower, only in very limited circumstances. *Stewart v. Machias Sav. Bank*, 2000 ME 207, ¶ 11, 762 A.2d 44 ("Standing alone, a creditor-debtor relationship does not establish the existence of a confidential or fiduciary relationship") (quoting *First NH Banks Granite State v. Scarborough*, 615 A.2d 248, 250 (Me. 1992)). Rather to establish such relationship, "a party must demonstrate diminished emotional or physical capacity or the letting down of all guards and bars." *Id.*

In this case, the record compels the conclusion that Plaintiffs have been adverse to Defendant in this and the Vachon–Beale litigation for years. Because the narrow circumstances under which a fiduciary duty may be established are entirely absent in this case, the court will not analyze the conduct of the sale under a fiduciary standard.

Further, the pendency of Plaintiffs' challenge to the foreclosure sale has justified the extensions of the deadline for Corbin to close on his purchase of the real estate. Sloan's Cove

---

[+] "But a record is not constructive notice of more than the record itself discloses. Third persons are chargeable with notice of no more than they can ascertain from the record or from being put upon their inquiry by the record." *Thurlough v. Dresser*, 98 Me. 161, 56 A. 654, 655 (1903).

16

has indicated that Corbin will close upon the completion of this litigation, when he can obtain adequate title insurance. (Def.'s Rep. Mot. 9.)

### iv. Inadequate Sale Price

Plaintiffs argue that the sale price procured by the foreclosure auction was grossly inadequate as the Defendant did not arrange to sell the contents of the hotel together with the land and the ultimate sale price was almost $200,000 below the appraised value. (Pl.'s Opp. Mot. 8, 29.) The Law Court has held "price inadequacy is generally an insufficient basis on which to challenge the reasonableness of a sale unless other factors exist, such as fraud, unfairness, or other irregularity." *Bar Harbor Bank & Trust v. Woods at Moody, LLC,* 2009 ME 62, ¶ 20, 974 A.2d 934; *First Tracks Investments, LLC v. Sunrise Schoolhouse, LLC,* BCD-CV-11-31 (Bus. & Consumer Ct. Apr. 13. 2012).

In this case, while the sale price was below the assessed value, the sale yielded a $100,000 surplus. Further, pursuant to the power of sale statue:

> [U]pon . . . default . . . in performance . . . the mortgagee . . . may sell the mortgaged premises or such portion thereof as may remain subject to the mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by a public sale on or near the premises then subject to the mortgage, or, if more than one parcel is then subject thereto, then on or near one of said parcels, or at such place as may be designated for the purpose in the mortgage, first complying with the terms of the mortgage and the statutes relating to the foreclosure of mortgage by the exercise of a power of sale.

33 M.R.S. § 501-A. This indicates that the mortgagee has some discretion as to what is sold at the auction. Thus, even assuming the premise of the Plaintiffs' argument that including the personality in the sale would have enhanced the foreclosure sale price for the real estate, the court will not set aside the sale based on an inadequate sale price.

### 3. The Overall Equities

The foregoing sections of this Order have analyzed the validity of Sloan's Cove's foreclosure in light of each of the Plaintiffs' objections separately, and has concluded that none

17

of the Plaintiffs' objections, in and of itself, supports setting aside the sale. However, it is also necessary for the court to assess the Plaintiffs' objections together, as a totality, for purposes of deciding, "whether it would be equitable to set aside the sale given the procedures that were employed by the mortgagee." *KeyBank Nat. Ass'n v. Sargent*, 2000 ME 153, ¶ 38, 758 A.2d 528; *see also Farm Credit of Aroostook v. Sandstrom*, 634 A.2d 961, 962-63 (Me. 1993).

Here, Sloan's Cove's filings affirmatively demonstrate that it complied with the express requirements of the power of sale foreclosure statute. Although an attorney rather than an auctioneer conducted the sale, the result was a winning bid higher than the amount owed. The information on who owned the property was a matter of record and easily ascertainable. Sloan's Cove had no obligation to assist Vachon in stopping the sale, which was his avowed objective, by reminding him that he owned the property.

As to the issue of an equitable basis for setting aside the sale, the court does not see the equities tilted in favor of the Plaintiffs, and also does not see any genuine issue of material fact that would preclude summary judgment. Accordingly, the court will grant Sloan's Cove's motions for summary judgment as to Count I of the Complaint and as to the Counterclaim.

### 4. *Sloan's Cove's Request for Certification Under M.R. Civ. P. 54(b)*

Sloan's Cove has also moved that any judgment on its favor on Count I of the Complaint and on the Counterclaim be certified as final pursuant to Rule 54(b) of the Maine Rules of Civil Procedure. "Rule 54(b) requires a trial court to make an express determination that there is no just reason to delay the entry of a final judgment on a claim." *Key Bank of Me. v. Park Entrance Motel*, 640 A.2d 211, 212 (Me. 1994). In determining whether there is "no just reason for delay" Maine courts consider:

> [T]he relationship between adjudicated and unadjudicated claims, the likelihood that the reviewing court will face the same issues more than once, the possibility that future action by the trial court will render moot the need for review, whether immediate appeal

will expedite the trial process, and miscellaneous factors such as the *res judicata* effect of a final judgment and economic and solvency considerations.

*Fleet Nat. Bank v. Gardiner Hillside Estates, Inc.*, 2002 ME 120, ¶ 13, 802 A.2d 408.

The Law Court has further held that a final judgment should be entered "only in limited and special circumstances . . . . Because there is a strong policy against piecemeal review of litigation, there must be a good reason for the certification." *Guidi v. Town of Turner*, 2004 ME 42, ¶ 9, 845 A.2d 1189. Thus, the court must "determine whether the facts of this case constitute such an unusual circumstance." *Id.* ¶ 10.

In this case, Count IX of the Plaintiffs' Complaint, requesting an accounting, remains. At this stage, the court needs to know more about the scope and timeframe for the accounting in order to determine whether Rule 54(b) certification is appropriate. An accounting that can be presented expeditiously argues against Rule 54(b) certification; an extensive accounting proceeding could argue in favor of such certification. Accordingly, the court defers action on Sloan's Cove's Rule 54(b) request until at least a further conference of counsel.

### CONCLUSION

For the reasons stated, the court concludes that Defendant Sloan's Cove is entitled to summary judgment on both Count I of the Complaint and the Counterclaim. The entry will be: Defendant's Amended Motion for Summary Judgment is granted, except with regard to Rule 54(b) certification. Judgment for Defendant against Plaintiffs on Count I of the Complaint and on the Counterclaim.

The Clerk will schedule a conference of counsel on the remaining claim.

Pursuant to M.R. Civ. P. 79, the clerk is hereby directed to incorporate this Order into the docket by reference.

Dated October 15, 2014

_____
A. M. Horton, Justice
Business & Consumer Court

**Oceanic Inn, Inc. and Armand Vachon v. Sloan's Cove, LLC, et al.**
**BCD-RE-14-01**


**Oceanic Inn, Inc. and Armand Vachon**
    **Petitioner / Plaintiff**

        Counsel:                John Campbell, Esq.
                                  59 Baxter Boulevard
                                  Portland, ME 04101


**Sloan's Cove, LLC**
    **Respondent / Defendant**

        Counsel:                 Daniel Cummings, Esq.
                                  Two Canal Plaza
                                  PO Box 4600
                                  Portland, ME 04112-4600


**Chapter 13 trustee**
    **Party In Intrest**        Peter Fessenden, Esq


**Jeff Corbin**
    **Party in Intrest**        Pro-se

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-RE-14-01

CUM-aMH- 04-02-14

OCEANIC INN, INC. and ARMAND
VACHON,

    Plaintiffs,

  v.

SLOAN'S COVE, LLC,

    Defendant

and

PETER FESSENDEN, Chapter 13 Trustee,
and JEFF CORBIN

    Parties-in-Interest

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## *ORDER ON MOTION TO DISMISS OF DEFENDANT SLOAN'S COVE*

Pursuant to M.R. Civ. P. 12(b)(6), Defendant Sloan's Cove, LLC has filed a Motion to

Dismiss most counts of the Complaint of Plaintiffs Oceanic Inn, Inc. and Armand Vachon,

which Complaint alleges: 1) breach of contract (Count I); 2) breach of the duty of good faith and

fair dealing (Count II); 3) tortious interference with prospective economic advantage (Count

III); 4) slander of title (Count IV); 5) fraud (Count V); 6) negligent misrepresentation (Count

VI); 7) violation of Maine's Uniform Fraudulent Transfer Act (UFTA), 14 M.R.S. §§ 3571-82

(2013), (Count VII); 8) violation of Maine's Unfair Trade Practices Act (UTPA), 5 M.R.S. §§

205-A to 214 (2013), (Count VIII); 9) accounting (Count IX); 10) breach of fiduciary duty

(Count X); and 11) negligent infliction of emotional distress (Count XI). The only count

Defendants do not seek to dismiss is Count IX.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from Plaintiffs' complaint and are presumed to be true for the purposes of the motion. *See Johnston v. Me. Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶2, 997 A.2d 741. Armand Vachon is the principal and owner of Oceanic Inn, Inc., a Maine corporation. (Compl. ¶¶1-2.) Sloan's Cove, LLC, is a Maine limited liability company wholly owned by Pauline Beale, Vachon's sister. (Compl. ¶¶3, 9.) For several years, Vachon and Beale have been involved in litigation surrounding the probate of their mother's estate, of which Beale is the personal representative. (Compl. ¶¶10-15.) The relationship between brother and sister is contentious. *(See, e.g.,* Compl. ¶¶14-15, 24, 27.)

In 2006, Oceanic Inn executed a mortgage and note on its real property in Old Orchard Beach in favor of TD Bank. (Compl. ¶¶6, 39.) In 2009, TD Bank assigned the note and mortgage to Sloan's Cove pursuant to a settlement agreement to satisfy Oceanic Inn's debts. (Compl. ¶7.) The settlement agreement called for Oceanic Inn and Vachon to make interest only payments to Sloan's Cove for three years and then a balloon payment. (Compl. ¶8.) (Compl. ¶16.) All interest only payments were paid in a timely fashion to Sloan's Cove, but in November of 2012, Oceanic Inn and Vachon were unable to make the balloon payment when it became due. (Compl. ¶16.)

In December of 2012, Oceanic Inn filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and listed Sloan's Cove as its only secured creditor. (Compl. ¶¶17, 19.) The purpose of the filing was to invoke the automatic stay and allow Oceanic Inn time to formulate a plan to pay its debts without apprehension of foreclosure. (Compl. ¶18.) Oceanic Inn proposed a plan with the Bankruptcy Court to resolve its debt, but Sloan's Cove blocked the plan, and the case was ultimately dismissed. (Compl. ¶¶21-28.) Oceanic then attempted to

2

refinance its debt, but had difficulty obtaining a payoff amount from Sloan's Cove. (Compl. ¶¶ 30-35.)

On August 19, 2013, Sloan's Cove sent to Vachon a notice of sale of real estate pursuant to the mortgage and note granted by Oceanic to TD Bank and now held by Sloan's Cove. (Compl. ¶¶ 38-39.) The notice stated it was regarding Oceanic Inn and was addressed to Vachon, but sent to him at Oceanic Inn's address. (Compl. ¶ 38.) The sale was scheduled for September 13, 2013. (Compl. ¶ 36.) During the course of preparing for the auction, counsel for Sloan's Cove learned that since 2009, title to the real estate was held in the name of Vachon, not in the name of Oceanic Inn. (Compl. ¶¶ 41, 61.) The parties attempted to settle their disputes prior to the scheduled auction, but were unable to do so. (Compl. ¶¶ 37, 40-42.) Again, Oceanic Inn was unable to get accurate pay off amounts from Sloan's Cove until the one day before the auction. (Compl. ¶ 43.)

In an attempt to stop the auction, Oceanic Inn filed a second voluntary petition for relief under chapter 11 of the U.S. Bankruptcy Code, again listing Sloan's Cove as the only creditor, and alerting Sloan's Cove of the filing before the auction began. (Compl. ¶¶ 44-47.) Counsel for Sloan's Cove alerted the bidders at the auction that a bankruptcy case had been filed, but stated he anticipated he would be able to consummate a sale. (Compl. ¶ 48.) Plaintiffs allege the announcement had a chilling effect at the auction, at which Jeff Corbin was the highest bidder for $455,000. (Compl. ¶ 50.) Sloan's Cove proceeded with the auction despite the bankruptcy filing because title to the property was held by Vachon, not Oceanic Inn. (Compl. ¶ 56.)

Plaintiffs assert that the notice of sale was insufficient to put Vachon on notice that his property would be sold because the notice only references Oceanic Inn's property. (Compl. ¶ 62.) Plaintiffs sought injunctive relief from the Bankruptcy Court to prevent Sloan's Cove

and Corbin from closing on the sale on this ground, but the Bankruptcy Court denied the motion for preliminary injunction. (Compl. ¶¶65-68.)

Plaintiffs filed suit in York County Superior Court on September 24, 2013. The case was approved for transfer to the Business and Consumer Docket on October 24, 2013.

## STANDARD OF REVIEW

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the complaint and, on such a challenge, the material allegations of the complaint must be taken as admitted." *Shaw v. S. Aroostook Cmty. Sch. Dist.*, 683 A.2d 502, 503 (Me. 1996) (quotation marks omitted). "The complaint is viewed 'in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory.'" *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶6, 54 A.3d 710 (quoting *McCormick v. Crane*, 2012 ME 20, ¶ 5, 37 A.3d 295). "The purpose of a complaint in modern notice pleading practice is to provide defendants with fair notice of the claim against them." *Shaw*, 683 A.2d at 503 (quotation marks omitted). "A complaint is properly dismissed when it is beyond doubt that the plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim." *Richardson v. Winthrop Sch. Dep't*, 2009 ME 109, ¶5, 983 A.2d 400 (quotation marks omitted).

## DISCUSSION

### I.    Breach of contract (Count I)

In this claim, Plaintiffs assert that Sloan's Cove failed to hold a commercially reasonable auction and notice the sale of the property. (Compl. ¶¶70-71.) Sloan's Cove asserts that these claims amount to a failure to comply with the foreclosure statute, not a breach of the contract. Although labeled as breach of contract action, the failure to comply with the notice provisions of 14 M.R.S. § 6203-A (2013) is a claim upon which relief can be granted. Accordingly,

4

Plaintiffs have alleged "facts that would entitle [them] to relief pursuant to some legal theory." *Ramsey*, 2012 ME 113, ¶6, 54 A.3d 710 (quotation marks omitted).

II.    Breach of the duty of good faith and fair dealing (Count II)

Plaintiffs allege that pursuant to Maine's adoption of the Uniform Commercial Code (UCC) and the common law, Sloan's Cove had a duty to act in good faith and deal with Plaintiffs in an objectively fair and commercially reasonable manner with respect to the note and mortgage. (Compl. ¶74.) Plaintiffs assert that Defendants breached this duty by refusing to submit accurate pay off information, failing to hold a commercially reasonable auction, and failing to properly notice the sale of the property. (Compl. ¶75.) The claim is thus premised on the sale of the real estate.[1]

To the extent Plaintiffs rely on the UCC, this claim fails to state a cause of action. The relationship between Oceanic Inn and Sloan's Cove "is that of a mortgagor to a mortgagee of real estate and is not governed by the Uniform Commercial Code." *Camden Nat'l Bank v. Crest Constr., Inc.*, 2008 ME 113, ¶18, 952 A.2d 213; *accord* 11 M.R.S. § 9-1109(4)(k) (2013) ("This Article does not apply to . . . [t]he creation or transfer of an interest in or lien on real property . . ."). Because the UCC does not apply to the relationship, the implied covenant of good faith and fair dealing in UCC transactions does not apply.

To the extent Plaintiffs rely on the common law, the claim also fails to state a cause of action. The Law Court has declined repeatedly "to extend the implied covenant of objective good faith in contracts not governed by Maine's U.C.C." *Niedojadlo v. Cent. State Moving & Storage Co.*, 1998 ME 199, ¶ 10, 715 A.2d 934; *accord Crest Constr.*, 2008 ME 113, ¶18, 952 A.2d 213; *Haines v. Great N. Paper Inc.*, 2002 ME 157, ¶15, 808 A.2d 1246 ("We have declined to impose a duty of good faith and fair dealing except in circumstances governed by specific

---

[1] The mortgage at issue also granted a security interest in personal property to TD Bank (*see* Cummings Aff. Exh. 1), but there is no allegation regarding wrongdoing with respect to personal property.

5

provisions of the Uniform Commercial Code."). Count II must be dismissed for failure to state a claim upon which relief can be granted.

III.    Tortious interference with economic advantage (Count III)

Plaintiffs assert that Sloan's Cove's commencement of the power of sale foreclosure, the related publication of the notice of the sale, and conduct at the auction constitutes false statements concerning Plaintiffs that "wrongfully interfered with the Plaintiff's existing or prospective contracts and/or economic advantage." (Compl. ¶¶ 78-80.)

A claim for "[t]ortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 31, 915 A.2d 400 (quoting *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104, 1110). To interfere with the advantageous relationship by fraud, a plaintiff must also demonstrate (1) the defendant made a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing another party to act in reliance upon it; and (5) the other party justifiably relied upon the representation as true and acted upon it to the detriment of the plaintiff. *See id.* ¶ 14. Finally, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." M.R. Civ. P. 9(b).

Plaintiffs' allegations fall short of these standards. Notably, Plaintiffs have failed to identify any false statement made by Sloan's Cove that would induce a third party to rely upon the statement or any third party who did in fact rely upon the statement to Plaintiffs' detriment. Count III accordingly will be dismissed.

6

## IV.    Slander of title (Count IV)

Plaintiffs assert that Sloan's Cove's commencement of the power of sale foreclosure, the related publication of the notice of the sale, appearance in bankruptcy proceedings, and conduct at the auction constitutes false statements concerning Plaintiffs' title to the property. (Compl. ¶¶ 83-85.)

"'[S]lander of title' is a form of the tort of injurious falsehood that protects a person's property interest against words or conduct which bring or tend to bring the validity of that interest into question." *Colquhoun v. Webber*, 684 A.2d 405, 409 (Me. 1996). To make out a claim for slander of title requires allegations that: "'(1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages.'" *Rose v. Parsons*, 2013 ME 77, ¶ 13, 76 A.3d 343 (quoting *Colquhoun*, 684 A.2d at 409).

The only statements alleged to have been made by Sloan's Cove are 1) in the course of the first bankruptcy filing when Sloan's Cove stated that Oceanic Inn owned the property, and 2) at the auction when Sloan's Cove's counsel stated that Oceanic Inn had filed for bankruptcy. (Compl. ¶¶ 26, 48.) The latter statement is admittedly true, and the former statement has not been alleged to cause any actual or special damages to Plaintiffs. Count IV will accordingly be dismissed.

## V.    Fraud (Count V)

Plaintiffs' fraud claim is based on alleged false statements of material fact made by Sloan's Cove to Plaintiffs and failure to disclose material facts to Plaintiffs in connection with the foreclosure and auction. (Compl. ¶ 87.) More specifically, Sloan's Cove alleged "failure to

7

disclose the actual title holder of the property prior to auction and failure to give accurate pay off amounts prior to auction." (Compl. ¶ 88.)

Typically, a fraud claim involves an affirmative misrepresentation of a material fact by the defendant to the plaintiff that the plaintiff justifiably relies upon to his or her damage. *See Flaherty v. Muther*, 2011 ME 32, ¶ 45, 17 A.3d 640. In this case, Plaintiffs have alleged fraud both affirmative misrepresentation and through omission. "When a plaintiff alleges a failure to disclose rising to the level of a misrepresentation, the plaintiff must prove either (1) active concealment of the truth, or (2) a specific relationship imposing on the defendant an affirmative duty to disclose." *Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me. 1995). Plaintiffs' fraud claim does not allege a special relationship,[2] and thus the Court focuses the "active concealment of the truth" prong, i.e. "steps taken by a defendant to hide the true state of affairs from the plaintiff." *Kezer v. Mark Stimson Assocs.*, 1999 ME 184, ¶ 24, 742 A.2d 898. To prove fraud by active concealment, the defendant's omission must be an omission of a material fact, and "the plaintiff must justifiably rely on the omission of the material fact" to his or her damage. *Id.* ¶ 26. Further, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." M.R. Civ. P. 9(b).

Plaintiffs' fraud allegations fall short of these standards. The allegations amount to a bare recitation of the elements of the cause of action for fraud by affirmative misrepresentation; there is no reference to any steps taken to actively conceal information from Plaintiffs. Moreover, even the delay in receiving pay off information of the debt is not actionable because the absence of payout information is not a misrepresentation, and because Plaintiffs did not rely on the lack of information to their detriment. Because Plaintiffs have failed to allege facts that would constitute fraud, the Court must dismiss Count V.

---

[2] Plaintiffs have asserted a cause of action for breach of fiduciary duty, but as discussed later in this order, that cause of action fails for failure to state a claim upon which relief can be granted. *See* M.R. Civ. P. 12(b)(6).

8

## VI. Negligent misrepresentation (Count VI)

Plaintiffs allege the same misrepresentations and omissions in their negligent misrepresentation claim as in their fraud claim. (Compl. ¶¶ 93-94.) Plaintiffs also assert they relied on Sloan's Cove's false statements regarding who owned the property in choosing to file a bankruptcy case for Oceanic Inn instead of Vachon. (Compl. ¶ 95.)

A claim for negligent misrepresentation requires allegations that (1) the defendant supplied false information to the plaintiff; (2) failed to exercise reasonable care or competence in obtaining or communicating this information; (3) the plaintiff justifiably relied on this information; (4) to the plaintiff's detriment. *Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990) (adopting section 552(1) of the Restatement (Second) of Torts). "A person may justifiably rely on a representation without investigating the truth or falsity of the representation unless the person knows that the statement is false or the falsity is obvious." *Francis v. Stinson*, 2000 ME 173, ¶ 39, 760 A.2d 209.

Based on the allegations in the Complaint, it is less than clear upon what statement made by Sloan's Cove that Plaintiffs intend to rely in support of this cause of action. As with Plaintiffs' fraud claim the allegations amount to a bare recitation of the elements of the cause of action for negligent misrepresentation. To the extent that Plaintiffs assert that they justifiably relied upon a representation by Sloan's Cove regarding which of the Plaintiffs owned the real estate, such reliance is not justifiable. *Cf. Francis*, 2000 ME 173, ¶ 42, 760 A.2d 209 ("As a matter of general contract law, parties to a contract are deemed to have read the contract and are bound by its terms."). Accordingly, the Court will dismiss this count.

## VI. UFTA violation (Count VII)

Plaintiff Vachon asserts that Sloan's Cove's sale of the property for an inadequate amount is a violation of UFTA. (Compl. ¶¶99-101.) Plaintiffs however misapprehend the nature of UFTA. UFTA provides a cause of action for a *creditor* when a debtor transfers property in an attempt to avoid paying his or her debts. *See* 14 M.R.S. § 3575(1). UFTA does not provide a cause of action for debtors, and Plaintiffs have failed to allege facts that would qualify them for relief pursuant to UFTA.

## VIII. UTPA violation (Count VIII)

UTPA declares that "[u]nfair methods and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. 5 M.R.S. § 207. UTPA provides a cause of action for "[a]ny person who purchases or leases goods, services or property, real or personal, primarily for *personal, family or household purposes* and thereby suffers any loss of money or property, real or personal" as a result of unfair methods, acts, or practices. 5 M.R.S. § 213(1) (emphasis added).

Plaintiffs assert that Sloan's Cove violated UTPA "as a result of its actions and conduct and concealing of information in the foreclosure process" and that "Vachon is a consumer within the meaning of UTPA." (Compl. ¶¶104-05.) Defendants assert, however, that the statute does no apply because this was not a consumer transaction. Rather, the note and mortgage were for commercial purposes, not for "personal, family or household purposes."

The Law Court has not defined the scope of "personal, family or household purposes," but has consistently has referred to UTPA as a consumer protection statute. *See State v. Weinschenk*, 2005 ME 28, ¶11, 868 A.2d 200, 205 ("Maine's UTPA provides protection for *consumers* against unfair and deceptive trade practices." (emphasis added) (citation omitted)); *Jolovitz v. Alfa Romeo Distribs. of N. Am.*, 2000 ME 174, ¶9 n.1, 760 A.2d 625 (stating that the

10

UTPA "provides a private remedy to *consumers* of personal, family or household goods, services or property" (emphasis added)); *Bangor Publ'g Co. v. Union St. Mkt.*, 1998 ME 37, ¶7, 706 A.2d 595 (explaining that unlawful practices under UTPA "must not be outweighed by any countervailing benefits to *consumers* or competition that the practice produces; and it must be an injury that *consumers* themselves could not reasonably have avoided" (emphasis added)); *accord* 5 M.R.S. § 214 ("Any waiver by a *consumer* of the provisions of this chapter . . . shall be void." (emphasis added)). Moreover, the Law Court recently affirmed a trial court decision that concluded a transaction between two businesses was not protected by UTPA because the transaction was not primarily for personal purposes. *See Seacoast RV, Inc. v. Sawdran, LLC*, 2013 ME 6, ¶¶2, 5, 58 A.3d 1135.

Fairly read, Plaintiffs' complaint portrays a commercial dispute between two business entities regarding a debt and resulting foreclosure of real estate. *See America v. Sunspray Condo. Ass'n*, 2013 ME ¶15 (analyzing substance of the overall complaint). The fact that Oceanic Inn is a family business does not alter that it is in fact a *business*. Vachon's conclusory assertion that he is a "consumer" is insufficient absent any other allegations substantiating the nature of the note and mortgage as for "personal, family, or household purposes." Accordingly, the Court will dismiss Count VIII.

## IX. Breach of fiduciary duty (Count X)

Plaintiffs assert that Beale owes fiduciary duties to Vachon as the personal representative of the estate of Vachon and Beale's mother, including the duty to account for disposition of assets, and this duty was breached by failing to keep Plaintiffs informed about the sale of the real estate. (Compl. ¶¶110-11.)

The Court does not question that a cause of action for breach of fiduciary duty can be brought by a beneficiary against a personal representative regarding distribution of estate

11

assets. "Personal representatives of an estate are fiduciaries, and pursuant to 18–A M.R.S. § 3-703(a) (2013), they must observe the same standards of care that apply to trustees of an express trust as set out in specified provisions of the Maine Uniform Trust Code. Among the standards of care that apply to personal representatives are the duties of loyalty and impartiality." *In re Estate of Greenblatt*, 2014 ME 32, ¶ 12, -- A.3d ---.

Pauline Beale, however, is not a named defendant in this case.

"The salient elements of a" fiduciary or confidential relationship "are the actual placing of trust and confidence in fact by one party in another and a great disparity of position and influence between the parties to the action." *Morris v. Resolution Trust Corp.*, 622 A.2d 708, 712 (Me. 1993) (quoting *Ruebsamen v. Maddocks*, 340 A.2d 31, 35 (Me. 1975)). "Standing alone, a creditor-debtor relationship does not establish the existence of a confidential relationship. To demonstrate the necessary disparity of position and influence in such a bank-borrower relationship, a party must demonstrate diminished emotional or physical capacity or . . . the letting down of all guards and bars." *Crest Constr.*, 2008 ME 113, ¶ 13, 952 A.2d 213 (quotation marks omitted).

As alleged, the facts in the complaint do not support a fiduciary or confidential relationship between Oceanic Inn and Sloan's Cove because there is no facts to support a great disparity of position or the actual placing of trust in confidence by the Plaintiffs in Sloan's Cove. Accordingly, the Court will dismiss the claim for breach of fiduciary duty.

X.    Negligent Infliction of Emotional Distress (Count XI)

Finally, Plaintiff Vachon asserts a claim for negligent infliction of emotional distress based on Sloan's Cove's breaches of fiduciary duty. (Compl. ¶¶ 116-118.) The Law Court has "recognized a duty to act reasonably to avoid emotional harm to others in very limited circumstances: first, in claims commonly referred to as bystander liability actions; and second,

12

in circumstances in which a special relationship exists between the actor and the person emotionally harmed." *Curtis v. Porter*, 2001 ME 158, ¶ 19, 784 A.2d 18, 26. The present dispute does not implicate the bystander line of cases. The Court has already stated that the complaint does not allege the elements of a special or confidential relationship, and accordingly, Vachon has failed to state a cause of action for negligent infliction of emotional distress. *See id.* ¶ 21, 784 A.2d 18.

## CONCLUSION

Based on the foregoing, the Court GRANTS the motion to dismiss as to Counts II, III, IV, V, VI, VII, VIII, X, and XI, and DENIES the motion to dismiss as to Count I. The dismissal of the aforementioned counts is without prejudice, and Plaintiffs may move to amend their complaint should facts develop to support further theories through the course of discovery.

Pursuant to M.R. Civ. P. 79, the clerk is hereby directed to incorporate this order into the docket by reference.

Dated: *April 2, 2014*

A. M. Horton
Justice, Business and Consumer Court

**Oceanic Inn, Inc. and Armand Vachon**
**v.**
**Sloan's Cove, LLC**
**And**
**Parties-in-Interest:  Peter Fessenden, Chapter 13 Trustee and Jeff Corbin**


**BCD-RE-14-01**


**Oceanic Inn, Inc. and Armand Vachon**

    **Plaintiffs**

    Counsel:               John Campbell, Esq.
                              59 Baxter Boulevard
                              Portland, ME 04101


**Sloan's Cove, LLC**

    **Defendant**

    Counsel:               Daniel Cummings, Esq.
                              Two Canal Plaza
                              PO BOX 4600
                              Portland, ME 04112